Argued and submitted July 11, 1986, affirmed in part, otherwise reversed and remanded June 24, 1987

# STATE OF OREGON,
*Appellant,*

*v.*

# KATHY LEAH KNOCH,
*Respondent.*

(8509-2018c; CA A38945)

738 P2d 979

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The state appeals a pretrial order suppressing a tape recording of defendant's conversation with a police officer following her arrest for driving under the influence of intoxicants. We reverse in part.

Defendant was stopped by an Oregon State patrolman after he had observed her driving at a high rate of speed with her headlights off. She was arrested at the scene and advised of her *Miranda* rights. The officer tape recorded statements made by defendant before her arrest and then turned off the recorder after she expressed a desire to remain silent. She was subsequently transported to the police patrol office, where the tape recorder was started again and she was advised by the same patrolman that it was operating.

After some conversation between defendant and the officer, he asked for her address. She initially refused to give him the information, explaining: "If you get my attorney here, I will talk to you." She was allowed to telephone a friend, who she said would contact her attorney. The officer requested that defendant submit to a breathalyzer test. She was informed of the consequences of refusing the test. After questioning the patrolman about the nature and consequences of the test, she refused to take it. When she was reminded that her license would be suspended, she stated: "Can I ask you exactly what I was doing that got you so hot after me?" The patrolman responded that he could only repeat what he had told her earlier. Defendant interjected "Uh, yeah. Do that for me." The patrolman then proceeded to outline the circumstances of the arrest and the defendant interjected several comments, including her statement that she was traveling 65 miles per hour before the arrest.[1]

The state offered the tape recording to demonstrate defendant's voice characteristics and her manner of speaking as evidence that she was under the influence of intoxicants. Other than defendant's statement that she was traveling 65 miles per hour rather than 70 as the officer indicated, there

---

[1] Defendant did not submit a brief or appear at oral argument. We do not know which specific statements on the tape, if any, she finds objectionable. Nevertheless, we will treat defendant's statement suggesting that she was traveling faster than the legal speed limit shortly before her arrest as an admission.

were no incriminating statements and no questions recorded on the tape.

The trial court ruled that the taking of evidence—defendant's voice characteristics and speech—by a tape recording after she had asserted her right to remain silent and to have an attorney present, violated her rights under the Fifth Amendment.[2]

The tape recording can be divided into four parts for analysis of admissibility. The first part involved defendant's statement that she declined to talk to the officer after he had advised her of her rights and, a short time later, that she wished to have her attorney present. That part also includes the conversation defendant had on the telephone with her friend about contacting her attorney. The state agrees that those portions of the tape are not admissible and can conveniently be excised before the tape is received in evidence. The second part of the tape involves an extensive conversation between the officer and defendant regarding her current address. The third involves the officer's request that defendant submit to a breathalyzer test and her response. The fourth records a discussion after defendant asked the officer for an explanation as to why she was arrested.

■ The physical characteristics of a person's voice and the speech patterns, as opposed to the substantive content of the person's speech, are not excluded as compelled self-incrimination under the Fifth Amendment. In *United States v. Dionisio,* 410 US 1, 93 S Ct 764, 35 L Ed 2d 67 (1973), the government, by a grand jury subpoena, sought to compel the petitioner to give a voice sample for comparison with a statement recorded from a telephone tap. The petitioner claimed that the compelled voice recording violated his Fourth and Fifth Amendment rights. The Court held, on the basis of *Gilbert v. California,* 388 US 263, 87 S Ct 1951, 18 L Ed 2d 1178 (1967), and *United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967), that the compelled production of the voice exemplars did not constitute compelled self-incrimination. The recordings were used to show the physical properties

---

[2] Defendant's motion to suppress cited two United States Supreme Court cases as authority. No argument was made that her state constitutional rights were violated by recording her statements.

of the petitioner's voice and not the testimonial or communicative content of what was said. The Court also held that a compulsory demonstration of voice characteristics in response to a grand jury subpoena was not an unlawful seizure of evidence in violation of the Fourth Amendment. *See also State v. McConnville,* 67 Or App 601, 679 P2d 1373 (1984); *State v. Greer,* 58 Or App 419, 648 P2d 1338 (1982); *State v. Medenbach,* 48 Or App 133, 616 P2d 543 (1980).

■ Even though the physical voice properties evidenced by the recording are not excluded as compelled self-incrimination, there may be substantive content of the speech that is. The recording may then be excluded, even though it is offered for other than its content. After defendant invoked her rights and pursued her search for her attorney, the officer asked her questions and she responded. However, all the conversation between the officer and defendant after she invoked her rights is not necessarily custodial interrogation subject to suppression.

■ ■ Custodial interrogation does not occur simply because a law enforcement officer asks questions. In terms of the protection described in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), forbidden "interrogation" of a person in custody involves inquisitorial reparte that will likely illicit an incriminating response. *Rhode Island v. Innis,* 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980). It does not include questions normally attendant on arrest, custody or routine booking of a prisoner. *Rhode Island v. Innis, supra; State v. Rodriguez,* 37 Or App 355, 587 P2d 487 (1978), *rev den* 285 Or 319 (1979). In this case, the officer's inquiry regarding defendant's address, her responses and her question about smoking were not "interrogation" subject to the rights elucidated in *Miranda.* Consequently, the substance of the questions and answers recorded on the tape after defendant talked to her friend by telephone do not require suppression of that part of the tape.

■ *Former* ORS 487.805, in effect at the time of defendant's arrest, provided that evidence of a person's refusal to take a chemical intoxicants test is "admissible in any civil or criminal proceeding" arising out of acts committed while the person was allegedly driving while intoxicated. The United States Supreme Court has held that the admission in evidence

of a suspect's refusal to submit to a blood alcohol test does not offend the Fifth Amendment. *South Dakota v. Neville,* 459 US 553, 103 S Ct 916, 74 L Ed 2d 748 (1983). Tape recorded evidence of defendant's refusal to take the breathalyzer test in the present case was not constitutionally objectionable and was not subject to exclusion.

The last part of the tape could arguably be considered interrogation concerning the charge. However, the only response that could be considered incriminating was her statement that she was driving 65 miles per hour.

■ ■  Defendant had requested counsel right after her arrest. Under *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), defendant,

> "having expressed [her] desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available * * *, unless the accused [herself] initiates further communication, exchanges, or conversations with the police." 451 US at 484-85.

In *Oregon v. Bradshaw,* 462 US 1039, 103 S Ct 2830, 77 L Ed 2d 405 (1983), the Court explained the application of the *Edwards* analysis. The accused's inquiry after a request for counsel appropriately "initiates" further interrogation if it fairly "evince[s] a willingness and a desire for a generalized discussion about the investigation." 462 US at 1045-46. Clearly, the inquiry by defendant in this case evinced a willingness and a desire for discussion about her arrest.

■  A conclusion that she "initiated" further discussion does not end the analysis. The next inquiry is whether a valid waiver of the right to counsel and the right to remain silent occurred when defendant began the discussion about her arrest. *Oregon v. Bradshaw, supra.* That inquiry entails an examination of the totality of the circumstances, including the fact that defendant reopened the dialogue with the officer about the offense. The determination of whether there was a knowing and intelligent waiver of a right depends on the particular facts and circumstances of the case. *Johnson v. Zerbst,* 304 US 458, 58 S Ct 1019, 82 L Ed 1461 (1938). Ordinarily, it is a mixed question of fact and law which the trial court must resolve in the first instance. Because the court ruled that the entire tape recording was suppressed, it did not address the

issue of waiver. The only evidence introduced at the hearing was the tape recording; the facts and circumstances are undisputed; consequently, we may, at this juncture, determine whether there was a waiver as a matter of law on these facts.

■ We conclude that there was a waiver. Defendant had been advised fully of her constitutional rights and had exercised first her right to remain silent and her right to consult with counsel. She called a friend to enlist him in contacting her attorney and then engaged in a discussion with the officer regarding the consequences of taking or refusing a breathalyzer test. While the officer was responding to her inquiry as to why he arrested her, she interrupted him and interjected comments. There were no threats or promises made nor any impropriety on the part of the officer in reopening the discussion.

Admission of the recording for the purposes of showing the physical characteristics of defendant's voice does not violate the Fifth Amendment, and the content is otherwise not excluded under that Amendment with exceptions noted above.

Affirmed as to part of tape recording from time when defendant was advised of her rights to time when she indicated she wished to remain silent and part from the point when she requested to consult an attorney, including her attempts to contact him; otherwise reversed and remanded.