Argued and submitted September 26, 1990, judgment vacated; remanded for further findings with instructions November 27, 1991

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID MICHAEL HOUSTON,
*Appellant.*

## (C 88-11-37749; CA A62413)
821 P2d 1093

E. Ted Meece, Portland, argued the cause for appellant. With him on the brief was Deich and Meece, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

Richardson, P. J., dissenting.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Defendant appeals his convictions for assault in the first degree, ORS 163.185, assault in the second degree, ORS 163.175, reckless driving, ORS 811.140, failure to perform the duties of a driver involved in an injury accident, ORS 811.705, felony driving while revoked, ORS 811.175, and operating a motor vehicle in violation of an habitual offender order. ORS 811.185. He argues that the trial court erred in failing to determine whether he had received appropriate *Miranda*-type warnings before he made statements to the arresting officer and to his parole officer and whether he had knowingly and intelligently waived his rights. He also assigns error to the trial court's imposition of consecutive sentences on the assault convictions.

Defendant was involved in a fight at a tavern. During the altercation, he got into his car and drove onto the sidewalk, hitting and injuring one person and narrowly missing another. Several witnesses identified him. A few days after the incident, Officer Stolley went to his home. A woman answered the door and let him in. During the subsequent arrest, the woman was in the basement. She testified that she heard defendant yelling that he wanted an attorney but that she did not hear a warning nor hear Stolley ask defendant any questions.

Stolley testified that he gave warnings to defendant three times: while handcuffing him at the house, when they got into the police car and at a parking lot, where they met another officer who took defendant to the police station.[1] Defendant contends that he received his first warning at the parking lot and only after he had requested it. Stolley testified that defendant asked a series of questions between when he was advised of his rights at the house and when they reached the parking lot. He asked what he was charged with, who else was involved, whether he was going to jail and if he could file a complaint against some people for stealing from him. When told that he was being charged with hit and run, defendant responded that he did not think that he had hit anyone and

---

[1] Stolley admitted that he had testified in another hearing that he had first given the warning in the parking lot, but he said that he was mistaken at that time because he had not reviewed his notes.

that he just meant to scare them. He continued to talk about the incident after being advised of his rights at the parking lot. Stolley did not recall defendant's asking for an attorney. Defendant also spoke on the telephone to his parole officer and told her of the events that had occurred at the tavern.

Defendant moved to suppress all statements and admissions that he made to the arresting officer and to the parole officer. The trial court denied the motion on the basis that all of the statements were voluntary. Defendant asked the trial court to determine if and when he had been given warnings of his rights to remain silent and to have counsel present during interrogation. The court decided that it was unnecessary to do that in view of its conclusion that the statements were voluntary. Defendant argues that the trial court's failure to decide whether warnings were given before determining that the statements were voluntary requires reversal.

■　Warnings are not required unless a person is subjected to interrogation. As we said in *State v. Onuskanich*, 86 Or App 454, 458, 739 P2d 1062, *rev den* 304 Or 240 (1987):

> "The procedural safeguards outlined in *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), are required when a suspect in custody is subjected to interrogation; if there is no interrogation, there is no need for the warnings. *Rhode Island v. Innis*, 446 US 291, 300, 100 S Ct 1682, 64 L Ed 2d 297 (1980)."

Most of defendant's statements were made between the time that Stolley arrested him at the house and when they reached the parking lot.

■　The only interrogation took place after defendant and Stolley had arrived at the parking lot. Both parties agree that defendant was given warnings at that time. Defendant argues that Stolley's questions at the parking lot were impermissible, because he had told Stolley that he did not want to talk further and that he wanted his attorney. Stolley did not remember defendant's asking for an attorney. However, even assuming that defendant did ask for an attorney, interrogation could properly occur if defendant initiated it. As explained in *State v. Knoch*, 86 Or App 15, 20, 738 P2d 979 (1987):

"[D]efendant, 'having expressed [his] desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available * * *, *unless the accused [himself] initiates further communication, exchanges, or conversations with the police.*' " (Quoting *Edwards v. Arizona*, 451 US 477, 484, 101 S Ct 1880, 68 L Ed 2d 378 (1981); emphasis supplied.)

*See Minnick v. Mississippi*, 498 US ___, 111 S Ct 486, 112 L Ed 2d 489, 497 (1990).

Defendant "evinced a willingness and a desire" for further discussion. Stolley testified:

"Q   After he told you that he didn't want to talk about it, did he initiate any conversation?

"A   Yes, he did.

"Q   And would you explain how he did that.

"A   Again, he asked me, you know, what the charges were. I told him what the charges were. He advised me, in response to my answers, that he had been the driver; that he had been attacked; that he wanted to file a complaint against these other people.

"He named some people named Simpson. He had told me that he had intended to scare these people with the car; that he didn't think he had hit them."

Stolley then asked why he had not stopped, and defendant replied that "he didn't stop because he felt that he hadn't hurt anybody. There had been no contact."

■   We conclude that defendant did not make any statements in response to interrogation before he and Stolley reached the parking lot. Looking at the totality of the circumstances with respect to the statements made at the parking lot in response to interrogation, we conclude that defendant made a knowing and intelligent waiver of his right to counsel and his right to remain silent. *State v. Knoch, supra,* 86 Or App at 20.

In his second assignment of error, defendant contends that the court should have excluded the testimony of his parole officer, because she did not give him warnings during their telephone conversation. Defendant asserts that, before the court admitted the testimony, it should have made findings about whether he was given warnings, whether he

waived his right to remain silent and whether he was in custody. The trial court refused to exclude the testimony.

■    The admissibility of the testimony must be examined under both the United States and the Oregon Constitutions. Under the former, warnings must be given when a person is "in custody." *Oregon v. Elstad*, 470 US 298, 309, 105 S Ct 1285, 84 L Ed 2d 222 (1985). The United States Supreme Court has held that unwarned answers to a parole officer's questions are admissible if the circumstances do not demonstrate that a defendant was in a coercive atmosphere, such as police custody, that "conveys to the suspect a message that he has no choice but to submit to the officer's will and confess." *Minnesota v. Murphy*, 465 US 420, 432, 104 S Ct 1136, 79 L Ed 2d 409 (1984). In that case, the Court concluded that a meeting between the defendant and his parole officer did not require warnings. The defendant had gone to his parole officer's office at her request. The Court said:

> "Since [the defendant] was not physically restrained and could have left the office, any compulsion he might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator." 465 US at 433. (Footnote omitted.)

■    Under the Oregon Constitution, warnings are required when a defendant is in "full custody" or another setting that "judges would and officers should recognize to be 'compelling.' " *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (quoting *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987)). In *Smith*, the defendant was a resident at a Correctional Treatment Center. Although he would have violated his parole agreement by leaving the center, the court pointed out that he could have left the room without leaving the center and concluded, therefore, that he was not in a coercive setting. 310 Or at 9.

■    The trial court did not make findings concerning the circumstances of the telephone call, *i.e.*, where defendant was when the conversation occurred, who initiated the call and how long after defendant had been given *Miranda*-type

warnings by the police that the call took place.[2] Without those findings by the trial court, we are unable to determine whether defendant was in full custody or in compelling circumstances when he made the statements to the parole officer and whether he was properly advised of his rights. Accordingly, it is necessary to remand the case for further proceedings. *State v. Wise*, 305 Or 78, 82 n 2, 749 P2d 1179 (1988).

■    Because defendant's conviction may be reinstated, we address his assignment of error that the court failed to make specific findings as to the basis for imposing consecutive sentences. The court was required to find that the sentence was authorized by ORS 137.123(4)(a) or (b). *State v. Racicot*, 106 Or App 557, 561, 809 P2d 726 (1991). If the court does reinstate the judgment, those findings must be made.

Judgment vacated; remanded for further findings; if the court finds warnings by the parole officer were given or were not necessary, it shall reinstate the judgment and sentence defendant; otherwise, the court shall order a new trial.

**RICHARDSON, P. J.,** dissenting.

I disagree with the part of the majority opinion dealing with admission of defendant's statements to his parole officer. I conclude that, on the record, the court did not err by admitting the statements, so I dissent.

Defendant's entire argument under this assignment is:

"In this case, the State conceded that no warnings were given prior to the questioning of defendant [by the parole officer].

---

[2] The dissent suggests that we know the circumstances of the call and when it took place. The only evidence in the record supporting an inference that defendant was in jail when the phone conversation took place is a statement in the transcript of a parole revocation hearing that was admitted into evidence to show inconsistent statements made by Stolley. The statement was made by Anlecker, who represented the Corrections Division in place of defendant's parole officer Toland at that hearing. She said:

"[O]n November 16, according to [the parole officer] he admitted to the new charges from jail."

There is nothing in that statement that shows that defendant's confession was made during the phone conversation or even that it was made to Toland. Further, there is nothing in the record that indicates how long after Stolley gave defendant the *Miranda*-type warnings that the call took place.

The court should have made findings on the custody status of defendant, whether the warnings were given and if there was a waiver of his right to remain silent.

"Defendant concedes that the witness was not questioned on these matters, prior to the court hearing her testimony."

The argument and statement of the grounds for exclusion of the testimony in the trial court were equally terse. Defendant contended that a parole officer has to advise a parolee of his *Miranda* rights and told the court that he objected to the testimony on the same basis as he had objected to the testimony of Officer Stolley. There was no elaboration as to what he meant or how he related the circumstances of the conversation with his parole officer to the grounds for suppression of Stolley's testimony.

Defendant did not question the parole officer or put on any evidence regarding the circumstances of his conversation with her. The lack of a record to support his cryptic arguments on appeal make further analysis difficult.

Defendant moved to suppress the statements and had the responsibility to articulate the basis of his motion so that the parties can litigate it. The state stipulated that the parole officer had not given defendant any warning of his rights and that seemed to be the sole basis for defendant's motion. I see no reason why we should address theories or issues not preserved below.

The majority says:

"The trial court did not make findings concerning the circumstances of the telephone call, *i.e.*, where defendant was when the conversation occurred, who initiated the call and how long after defendant had been given *Miranda*-type warnings by the police that the call took place. Without those findings by the trial court, we are unable to determine whether defendant was in full custody or in compelling circumstances when he made the statements to the parole officer and whether he was properly advised of his rights." 110 Or App at 24-25. (Footnote omitted.)

However, the record discloses much of the information that the majority seeks. There is no dispute but that defendant was arrested on November 16, 1988, and that he was advised of his *Miranda* rights on that day sometime after his arrest,

as he was being taken to jail in custody. The telephone conversation with the parole officer was on November 16 and from the jail. Consequently, we know that defendant was probably in "full custody," that he had been advised of his *Miranda* rights a short time before by Stolley and that he was not again advised by the parole officer.

Even if we assume that defendant was in full custody at the jail and that the call was initiated by his parole officer, we know that he had just been advised of his rights and had the ability to terminate the conversation by hanging up the telephone. *State v. Smith*, 310 Or 1, 791 P2d 836 (1990); *see Minnesota v. Murphy*, 465 US 420, 104 S Ct 1136, 79 L Ed 2d 409 (1984). Defendant did not raise in the trial court, and only obliquely argues on appeal, that he did not waive his rights.

There is nothing in the record on which the trial court can base findings regarding the remaining inquiry posed by the majority—who initiated the conversation. That information is simply not material. Defendant had been advised of his rights, and he made no argument at trial that he had not waived them. Consequently, the parole officer could have interrogated him without violating his rights. Defendant could have protected those rights by simply hanging up the telephone. If there are any additional material defects in the record regarding this issue, defendant's contentions must fail, because he did not articulate any basis that would have induced the state to present any further evidence if the state has that burden.