The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Blake ANDERSON, Defendant–Appellant.

No. 91CA1818.

Colorado Court of Appeals, Div. IV.

May 21, 1992.

Rehearing Denied June 25, 1992.

Certiorari Denied Oct. 13, 1992.

295

Donald Mielke, Dist. Atty., Golden, Gale
A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M.
Tymkovich, Sol. Gen., Catherine P. Adkisson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Kenneth L. Keene, Jr., Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Blake Anderson, appeals
from a judgment of conviction entered
upon a jury verdict finding him guilty of
conspiracy to distribute a controlled substance and of special offender status. We
affirm.

This case arises from the sale of cocaine
by defendant and three co-defendants to
undercover drug enforcement officers. Co-defendant Steven Winters' girlfriend, acting as a confidential informant, arranged
the transaction.

The record indicates that Winters contacted co-defendant Tim Gutierrez, who
contacted defendant to supply the cocaine.
Defendant, who lived in Arizona, flew into
Denver to deliver the drugs. Several plastic baggies containing the cocaine were
strapped to his body and he was carrying a
gym bag.

Later, defendant put the cocaine in the
gym bag, met with Gutierrez and co-defendant Anthony Medina, and drove to a motel
room. Medina went into the room, told
Winters' girlfriend to leave, and, with Winters, transacted the sale with the undercover officers. The defendants were then arrested. Co-defendants Winters and Gutierrez pled guilty and testified against Medina
and defendant at each of their trials.

**296**

## I.

As he was being processed into jail after his arrest, defendant was asked, among other things, for his address. This information was written on the jail booking slip. Defendant ultimately was charged with special offender status, an element of which is that the defendant imported a controlled substance into Colorado. *See* § 18-18-107, C.R.S. (1986 Repl.Vol. 8B). Accordingly, defendant argues that the booking slip setting forth his address as Tempe, Arizona, should have been suppressed by the trial court. He contends that the fact that he was from Arizona was incriminating; therefore, to ask for his address without *Miranda* warnings violated his right against self-incrimination. We disagree.

■ A defendant who is placed in custody must receive *Miranda* warnings before being subjected to interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Interrogation" refers to words or actions that the police "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *People v. Trujillo*, 784 P.2d 788 (Colo. 1990).

■ However, the purpose of the *Miranda* rule is to protect a suspect against investigative interrogation and not from the routine gathering of basic identifying data needed for booking and arraignment. Thus, interrogation does not include questions "normally attendant to arrest and custody," *Rhode Island v. Innis, supra,* or to the routine booking of a prisoner. *State v. Knoch*, 86 Or.App. 15, 738 P.2d 979 (1987) (inquiry regarding address not interrogation); *State v. Mack*, 81 N.C.App. 578, 345 S.E.2d 223 (1986); *see United States v. Disla*, 805 F.2d 1340 (9th Cir.1986) ("routine gathering of background or 'booking' information ordinarily does not constitute interrogation"); *United States v. Glen-Archila*, 677 F.2d 809 (11th Cir.1982) (booking process includes being asked to provide name and address); *United States ex rel. Hines v. LaVallee*, 521 F.2d 1109 (2d Cir.

1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (such information "is required immediately to enable the police to book and arraign the suspect and to permit the magistrate to determine the amount of bail to be fixed and whether persons claiming to be relatives should be allowed to confer with the suspect").

■ Defendant argues, however, that, because the fact that he lived in Arizona was highly incriminating, he should not have been compelled to reveal that information without the protections provided by the *Miranda* warnings. We disagree.

Although the question of whether an officer's words or actions are "reasonably likely to elicit an incriminating response" must be viewed from the perspective of the suspect, *People v. Trujillo, supra,* routine booking questions, such as name, age, address, marital status, generally "[do] not enhance the pressure and anxiety generated by arrest and detention." J. Choper, Y. Kamisar & L. Tribe, *The Supreme Court: Trends and Developments 1979-1980* at 88 (1981). These are questions ordinarily addressed to every individual subjected to booking procedures. *See Clarke v. State*, 3 Md.App. 447, 240 A.2d 291 (1968). Moreover, there is nothing in the record here to indicate that the request to defendant to provide his address was anything more than routine, nor does defendant argue differently.

Under these circumstances, we conclude that the request for defendant's address, without more, does not constitute interrogation despite the fact that the address was relevant to an offense charged. "The focus must be on the time and circumstances under which the information was obtained, not the use to which it was ultimately put." *State v. Banks*, 322 N.C. 753, 370 S.E.2d 398 (1988) (even though defendant's age was an element of sexual assault on a child charge, it was not improper to ask that question as part of routine custodial booking process); *State v. Rassmussen*, 92 Idaho 731, 449 P.2d 837 (1969) (asking defendant's occupation during booking, which later turned out to be

incriminating, not type of interrogation proscribed by *Miranda v. Arizona*).

## II.

■ Defendant next contends that the trial court abused its discretion by denying his motion to disclose the confidential informant. We disagree.

■ If the disclosure of an informer's identity is relevant and helpful to the defense of an accused, the government's qualified privilege to choose not to disclose the identity of a confidential informant must yield when considerations of fundamental fairness so dictate. *People v. Villanueva*, 767 P.2d 1219 (Colo.1989). The decision whether the privilege applies is within the trial court's discretion. *People v. Walters*, 768 P.2d 1230 (Colo.1989).

■ If a defendant meets his initial burden of making a minimal affirmative showing of a reasonable basis in fact to believe that the informant is a likely source of relevant and helpful evidence to the accused, the trial court must decide whether the privilege applies by balancing the public's interest in protecting the flow of information to law enforcement authorities about criminal activity with the defendant's need to obtain evidence for the preparation of a defense. *People v. Walters, supra.*

■ The factors to be considered in this balancing process include: (1) whether the informant was a witness to the crime; (2) whether the informant is available or, in the exercise of reasonable diligence, could be made available as a witness; (3) whether other witnesses are in a position to testify; (4) whether the informant's testimony is likely to vary significantly from the testimony of other available witnesses; (5) whether the defendant can find the identity of the informant on his own; and (6) whether the informant was deeply or peripherally involved in the criminal transaction. *People v. Walters, supra.*

Here, the record indicates that, although the confidential informant was present during the meetings to arrange for the purchase of the drugs, she was not present during the actual transaction. Also, there were other witnesses who were available to testify as to the discussions that preceded the sale, and there was no evidence presented that the testimony of the informant would vary significantly from the testimony of these other witnesses.

Further, it is apparent from the record that the defendant could have discovered the identity of the informant without undue effort. The informant was Winters' girlfriend. A motions hearing was held almost two years prior to defendant's trial, and it is undisputed that all three co-defendants and their attorneys, as well as defendant and his attorney, were present. As the trial court found, defendant could have asked for the informant's name at that time. Also, as the trial court stated: "There has been no showing that [Winters], or his attorney, have refused to divulge the informant's identity." In fact, the informant's name was actually revealed during the Medina trial in November 1988, 18 months before defendant's trial.

Contrary to defendant's contention that the prosecution made no showing as to the reason for withholding the identity of the informant, there is evidence in the record that informant was concerned with her safety, that she was fearful, and that there were threats against her. *See People v. Thurman*, 787 P.2d 646 (Colo.1990).

Thus, we conclude that the court's findings of fact were supported by the evidence and that the proper factors in the balancing process were considered. The court did not abuse its discretion in denying the motion. *See People v. Walters, supra.*

## III.

Defendant next asserts that the conduct of the police officers in this case denied him a fair trial. He contends that the officers willfully failed to preserve evidence by "losing" some of the drugs seized, by failing to take interview notes during parts of the investigation, and by failing to preserve and disclose exculpatory evidence. We disagree with all of these contentions.

### A.

Defendant contends that the failure of the police to preserve material evidence deprived him of a fair trial. Specifically, he alleges that some of the drugs seized "disappeared" and that the police officers failed to take or preserve notes of critical investigative interviews. Accordingly, he argues, his due process rights were violated. We disagree.

■ The constitutional duty imposed on the state to preserve evidence is limited to that which is "constitutionally material." To be constitutionally material, the evidence must have an exculpatory value that was apparent before the evidence was lost or destroyed and the defendant must be unable to obtain comparable evidence through other available means. *People v. Wyman,* 788 P.2d 1278 (Colo.1990).

### 1.

■ Defendant argues first that the police failed to preserve all the drugs seized. Specifically, he points to the fact that the cocaine weighed 500.1 grams at the time of his arrest, but only weighed 476 grams when later analyzed by the Colorado Bureau of Investigation. His argument is without merit.

At the time they were seized, the drugs were in paper sacks sealed with tape. They were weighed the second time without the paper sacks and tape. The testimony at the motions hearing was that the paper sacks and tape, weighed separately, weighed approximately 35 grams.

Moreover, we fail to see how any so-called "discrepancy" in the weight of the cocaine, even if unexplained, could be exculpatory.

### 2.

■ Approximately one week before co-defendant Medina's trial, the police discovered a business card from a gym in Tempe, Arizona, in the bag in which the cocaine was found. This information was immediately given to defendant. At trial, on cross-examination, an officer testified that he had contacted the gym to see if defen-dant was a member and had ascertained that he was not. The officer also testified that he had checked the airlines to see if defendant had been booked on any flights to Denver but obtained no information because the airlines do not keep passenger lists more than forty-eight hours.

Defendant argues that the failure of the police to include this information in their narrative report or to take notes on this part of their investigation was a failure to preserve constitutionally material evidence. We disagree.

Whether defendant was or was not a member of the gym in Arizona or took a flight to Denver from Arizona was not only easily ascertainable by defendant, but within defendant's actual knowledge. Moreover, this information was not "lost or destroyed." *See People v. Rivers,* 727 P.2d 394 (Colo.App.1986).

### B.

■ For the first time on appeal, defendant contends that the failure of the police to provide to him the results of their investigation of his airline flight to Denver or gym membership in Arizona, and the failure of the police to take notes during certain meetings with co-defendant Gutierrez to discuss the possibility of setting up other drug buys to obtain favorable treatment in this case, was deliberate and constituted prosecutorial misconduct.

Error or defect in trial proceedings to which an accused fails to make a contemporaneous objection will not be the basis for reversal unless it casts serious doubts upon the basic fairness of the trial itself. *Wilson v. People,* 743 P.2d 415 (Colo.1987). We find no plain error.

The trial court entered a reciprocal discovery order pursuant to Crim.P. 16. As pertinent here, the prosecution was thus required to disclose the names and addresses of witnesses, "together with their relevant written or recorded statements," Crim.P. 16(I)(a)(1)(I), "any written or recorded statements and the substance of any oral statements" made by co-defendant if the trial is to be joint, Crim.P.

16(I)(a)(1)(II), and "[any] information within his possession or control which tends to negate the guilt of the accused." Crim.P. 16(I)(a)(3).

However, there is no duty on the prosecution to reduce oral interviews with witnesses to writing and to provide them to defense counsel. *People v. Graham,* 678 P.2d 1043 (Colo.App.1983); *see People v. Garcia,* 627 P.2d 255 (Colo.App.1980). Thus, we discern no misconduct from the mere failure of the police to take notes of meetings with Gutierrez or of their investigation of the airlines or the Arizona gym.

Defendant argues, nonetheless, that the prosecution still has a duty to disclose exculpatory information to defendant and that the prosecution abused its responsibilities here because the police willfully failed to provide such evidence to defendant.

■ We agree that the prosecution cannot circumvent an obligation to disclose exculpatory information by deliberately avoiding taking notes or reducing statements to writing. However, unlike the situation in *U.S. v. Van Nuys,* 707 F.Supp. 465 (D.Colo.1989), in which the prosecution deliberately instructed officers not to take notes, and contrary to defendant's assertion, the information at issue was neither exculpatory nor inculpatory, nor is there any evidence in this record of willful misconduct or bad faith.

### C.

■ Further, insofar as defendant is alleging that there was non-compliance with the trial court's discovery order, defendant's failure to object contemporaneously precludes appellate review "unless the alleged error is so serious as to prejudice [defendant's] basic rights." *People v. Graham, supra.* We find no such prejudice.

Defendant did not object to any of the testimony concerning Gutierrez, the card in the gym bag, or the airline flight information, nor did he request a continuance or make a suggestion to the trial court that he needed additional time to prepare a defense. "[Any] claim by the defendant at the appellate level that he was unfairly surprised and unable to prepare adequately for cross-examination is thoroughly discredited by his failure to move for a continuance at the trial level." *People v. Graham, supra.*

■ Moreover, the record is clear that the information concerning the meetings between the police and Gutierrez and the card in the gym bag was disclosed to defendant's attorney well before trial. And, as we have already stated, defendant certainly knew whether or not he had taken an airline flight to Denver. Evidence is not improperly withheld if the defendant has knowledge of it. *People v. Rivers, supra.*

### IV.

Defendant initially filed this case in the supreme court, contending that the special offender statute, § 18–18–107, C.R.S. (1986 Repl.Vol. 8B), is unconstitutionally void for vagueness, and violates principles of equal protection. He also claimed that the trial court erred in not conducting a bifurcated trial on the special offender count. However, the supreme court transferred this case to this court on the grounds that these arguments "have been heard and decided in *People v. Garcia,* 752 P.2d 570 (Colo. 1988)." That is dispositive. Accordingly, defendant's claims are without merit.

### V.

Finally, defendant contends that he is entitled to a new trial because the record on appeal is incomplete. He alleges that because there are some unintelligible phrases in a portion of the transcript of the motions hearing, his conviction must be reversed and a new trial ordered. We do not agree.

The situation here was created because the court reporter at the motions hearing died before he could transcribe his notes and another reporter was unable to translate various "words or phrases and occasionally an entire question or answer." The trial court held a hearing on limited remand from the supreme court and found that "the majority of the evidence and ar-

guments and the substance of the Court's ruling is clearly discernible from a review of the record." We agree.

The loss of a portion of the record does not require automatic reversal. If, as here, defendant is represented by the same attorney who defended him at trial, he must make a specific showing that errors in the record "visit[ed] a hardship upon [him] and prejudic[ed] his appeal." *See People v. Killpack*, 793 P.2d 642 (Colo.App. 1990); *see also United States v. Renton*, 700 F.2d 154 (5th Cir.1983).

Here, defendant does not specify any particular rulings which he has been prevented from challenging. Furthermore, our review of the transcript of the motions hearing indicates that although there are some words and phrases that are not transcribed and therefore are incomprehensible, this does not interfere with our ability to review fairly defendant's contentions. Therefore, the trial court did not err in its determination that the "untranslated portions [are] neither substantial nor significant so as to warrant reversal."

The judgment is affirmed.

CRISWELL and JONES, JJ., concur.