Argued and submitted December 21, 1995, affirmed May 22, petition for review denied July 23, 1996 (323 Or 691)

## STATE OF OREGON,
*Respondent,*

*v.*

## RANDALL VICTOR BROWN,
*Appellant.*

(940238M and 94CR0589; CA A88011 (control) and
CA A88012)
(Cases Consolidated)

917 P2d 527

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Timothy Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R.

Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Gayle T. Hunt, Assistant Attorney General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Affirmed.

## EDMONDS, J.

Defendant appeals from convictions for assault in the fourth degree, attempted assault in the fourth degree, and harassment. ORS 163.160; ORS 166.065. Defendant represented himself without the benefit of a lawyer throughout the proceedings that led to the conviction. On appeal, he argues that the trial court erred in accepting his waiver of counsel, because it did not determine that he understood the dangers and disadvantages of self-representation. Therefore he argues that his waiver of counsel was invalid under Article I, section 11, and the Sixth Amendment and that his convictions must be reversed. We affirm.

On May 31, 1994, at defendant's arraignment on the charges, the following discussion between the trial court and defendant occurred:

"[Trial Court]: [Y]ou have the right to have an attorney's assistance, and a right to an attorney can include a court-appointed attorney if indigent. So if you cannot afford an attorney, then an attorney can be appointed. But you should also understand you can be required to pay back the costs. In other words, attorney — not necessarily free.

"[A]t this point do you know what you're going to be doing on these various charges? Do you want some time to further think about it, or talk to an attorney, or someone before you decide on what you're going to do?

"[Defendant]: The latter, sir.

"[Trial Court]: How much time do you need to get a hold of an attorney?

"[Defendant]: I'd like 60 days.

"[Trial Court]: Well, you're not going to get 60 days, but if you want a couple of weeks to get a hold of an attorney, fine.

"[Defendant]: [B]efore I do that, I was wondering would I be able to just get the paperwork myself? I called down to the District Attorney's office and — and they can't allow it to go out in my hands.

"[Trial Court]: Do you have — you have to have an attorney or you got a written waiver of attorney in the case,

they'd probably sell copies of it, if you have one of those two probably.

"[Defendant]: And the written waiver, I would get from you?

"[Trial Court]: Yeah, if that's what you wanted to do.
* * *

"[Defendant]: Well, * * * the thing of it is * * * I actually don't know what I want to do on this thing until I see that —

"[Trial Court]: Then you probably need to go talk to an attorney, and he or she can look over the discovery with you and figure out what's going to be happening. We'll continue it * * * so you can talk to whatever attorney you wish to.

"* * * * *

"[Defendant]: [C]an I get the written waiver from — from you, and if I decide later to get an attorney, can I do it that way?

"* * * * *

"[Trial Court]: [C]ome up here. What this form says is that you've been advised of your right to have an attorney. You're choosing to represent yourself, so if that's what you want to do, fine, you can sign it right here —

"[Defendant]: Can I change it later?

"[Trial Court]: You can change it later, but in the interim, you're going to be sentenced [*sic*] for a status hearing that's going to be moving to trial. If you don't get an attorney, you might end up representing yourself at trial."

Defendant signed a written waiver of the right to counsel that day, which stated:

"I hereby waive my right to an attorney in the above-entitled proceeding and wish to represent myself. I understand that if I am indigent the court would appoint an attorney to represent me."

At a hearing on July 11, 1994, defendant and the trial court again discussed whether defendant would be represented at trial:

"[Defendant]: I would like to * * * get an attorney.

"[Trial Court]: Okay. Can you afford to hire an attorney?

"[Defendant]: Hopefully. Hopefully.

"[Trial Court]: You waived your right to an attorney on the record. I want to make sure. Have you ever been evaluated for court-appointed counsel?

"[Defendant]: No. I don't know if I have or not, your honor. I would, what I·would like to do is get, have time to get an attorney.

"* * * * *

"[Trial Court]: * * * I want you to return to court on August 1st at three o'clock. Have an attorney with you at that time, if you're going to be represented."

On August 1, the defendant appeared again before the court without an attorney. The trial court noted that defendant had signed a written waiver of right to counsel, and there was no further discussion of the matter. At the start of the trial on February 1, 1995, the court again raised the issue of whether defendant intended to have an attorney represent him:

"[Trial Court]: That kind of brings up the next question, and that is, apparently you do not have an attorney. Is there any particular reason for that?

"[Defendant]: Well, can I be honest with you?

"[Trial Court]: Sure.

"[Defendant]: I've asked a lot of the lawyers in town, and it doesn't seem that they would be working in my best interest on my case. And my — I've been doing this on my own, so I just think that it'd probably be better myself.

"[Trial Court]: That's fine. As long as you understand a couple of things. One is that — at least two of these are Class A misdemeanors, so each have [sic] a possible jail sentence of up to a year, and they're separate victims, so it can be separate consecutive sentence — sentences. On the others, it's * * * up to six months in jail. And again, those can be separate consecutive sentences. So you don't have an attorney, and if you're found guilty by this jury, the next step is sentencing. There's going to be some kind of a sentence.

"I see you have signed a written waiver of attorney in each of these files. So you still wish to represent yourself and not have an attorney?

"[Defendant]: Yes, sir."

**1.** Defendant argues that under Article I, section 11,[1] his waiver of the right to counsel was invalid because the court "made no mention of the potential pitfalls of self-representation" at any time when defendant appeared before the trial court. Section 11 guarantees a criminal defendant the right to counsel; however, a defendant may waive that right if the defendant understands the right to counsel and voluntarily gives it up. In *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992), the court explained the characteristics of a valid waiver of the right to counsel under section 11. It stated:

" 'We hold that a trial court may accept a defendant's proffered waiver of counsel only if it finds that * * * the defendant intentionally relinquishes or abandons that right.

" 'A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is *the preferred means* of assuring that the defendant understands the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate.

" '*Article I, section 11, [of the Oregon Constitution] does not require a catechism by the trial court*, however, before the right to counsel may be validly waived by a defendant. *The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right.*' " *Id.* at 133-34 (footnote omitted;

---

[1] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have a right to * * * be heard by himself and counsel[.]"

emphasis supplied; *see also State v. Cole*, 323 Or 30, 912 P2d 907 (1996)).

**2.** We turn to the record in this case to determine if it shows as a whole that defendant knew of his right to counsel and that he intentionally relinquished that right. At arraignment, the trial court told defendant that he had a right to counsel including a right to court-appointed counsel if he was indigent. Defendant signed written acknowledgments of those rights at that time. Furthermore, it is clear from the record that defendant was concerned throughout the pendency of the charges about the dangers of self-representation and desired representation by an attorney. More than eight months lapsed between the time of trial and the arraignment when defendant told the trial court that he wanted time to talk to an attorney. Moreover, he was encouraged by the trial court to have counsel throughout the proceeding.

Defendant told the trial court on the trial date,

"I've asked a lot of the lawyers in town, and it doesn't seem that they would be working in my best interest on my case. And my — I've been doing this on my own, so I just think that it'd probably be better myself."

Thereafter, the trial court informed defendant of the potential sentences. After explaining the ramifications of the charges, the trial court again asked defendant if he wished to represent himself, and defendant answered, "Yes, sir." Implicit in defendant's answer in the light of what occurred previously is compliance with the *Meyrick* standards. The record as a whole shows that defendant knew of his right to counsel and that he intentionally relinquished that right because he believed that no attorney with whom he had talked would work in his "best interests."

Nevertheless, defendant contends that under our holding in *State v. Curran*, 130 Or App 124, 127, 880 P2d 956 (1994), the court was obligated to be more explicit in its explanation. However, as the court pointed out in *Meyrick*, section 11 does not require a catechism by the trial court and whether a valid waiver occurs depends on the specific facts of each case. The facts in *Curran* differ significantly from the facts of this case. In *Curran*, the defendant intended from the

beginning of the court proceedings to proceed without counsel. He never spoke to an attorney regarding the charges against him, and the trial court never suggested that he should retain an attorney. We concluded that, under those circumstances, the trial court should have given *some* information about the risk of self-representation in order for the defendant to have made an informed decision about whether to be represented by counsel. Here, defendant intended to retain an attorney from his initial arraignment, was encouraged by the trial court to retain an attorney, spoke to attorneys and ultimately decided to represent himself. Based on those facts, we conclude that defendant knew of his right to counsel and intentionally relinquished that right. We also conclude that defendant "knowingly and intelligently" waived his Sixth Amendment right to counsel. *See Meyrick*, 313 Or at 137-38 (explaining that the analysis under the Sixth Amendment right to counsel is similar to the right to counsel under Article I, section 11).

The dissent would interpret section 11 more strictly than the Supreme Court has in *Meyrick*. It says, "At no time did the court inform defendant what the process of self-representation would entail." 141 Or App at 164. In effect, the dissent's analysis is contrary to the holding in *Meyrick* that the failure of a trial court to impart a particular piece of information to a defendant will not of itself require reversal of a conviction. As we have said, it is uncontroverted that defendant knew of his right to counsel and, in fact, endeavored to procure counsel to represent him. Moreover, it is clear from his statement to the trial court on the date of trial that he was intentionally relinquishing that right because he believed that he could represent himself better than the lawyers with which he had spoken. Because the record supports a knowing and intentional relinquishment of the right to be represented by counsel, his convictions are not constitutionally infirm.

Affirmed.

**ARMSTRONG, J.,** dissenting.

Because I disagree with the majority's conclusion that defendant's waiver was an understanding and voluntary relinquishment of his right to counsel, I respectfully dissent.

A valid waiver of counsel requires that a defendant know that she has the right to counsel, and that she intentionally relinquish it. That determination is based, in part, on the information that the defendant has about the consequences and pitfalls of proceeding without counsel. *State v. Curran*, 130 Or App 124, 126, 880 P2d 956 (1994).

> "In order to find that a waiver of the right to counsel is knowing, the trial court must assure itself that the defendant understands the risks of self-representation. The preferred means of doing this is a colloquy on the record between the court and the defendant 'about the dangers and disadvantages of self-representation.' "

*State v. Mendonca*, 134 Or App 290, 293, 894 P2d 1247 (1995) (quoting *State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992)). In this case, the record does not support a finding that defendant was informed specifically about the dangers and disadvantages of self-representation. At no time did the court inform defendant what the process of self-representation would entail.

The facts relied upon by the majority do not demonstrate that defendant was informed of the dangers and disadvantages of self-representation and, therefore, are insufficient to demonstrate that his waiver was knowing. The majority points out that the trial court informed defendant at arraignment that he had a right to counsel and a right to court-appointed counsel if he was indigent. 141 Or App at 162. Defendant stated that he would seek an attorney. At a subsequent hearing, the court again discussed with defendant whether he would be represented by counsel. Defendant stated that he still hoped to retain an attorney. The court did not discuss with defendant the dangers and pitfalls that he would face if he chose to proceed *pro se*. Defendant finally appeared for trial without an attorney, and the court, again, did not discuss the trial process or the dangers of appearing without counsel.

The majority points out that the trial court informed defendant about the potential sentence he could receive if found guilty. 141 Or App at 162. That information, by itself, was insufficient to inform defendant about what self-representation would entail. It did not tell him, for example, what

he would be called on to do should he proceed without counsel and the difficulties with proceeding in that manner.

The majority implies that defendant must have known those things based, in part, on the fact that he had talked to attorneys. The record does not indicate, however, what defendant and the attorneys talked about, except that it had led defendant to conclude that none of them would work "in his best interest." Thus, there is no basis on which to conclude that the attorneys explained the pitfalls of self-representation to defendant.

As the court pointed out in *Meyrick*:

"A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate." 313 Or at 133.

In this case, nothing in the record suggests that defendant was so informed.

The majority also points out that defendant had eight months to find an attorney and that defendant never claimed that he could not afford one. 141 Or App at 162. Neither of those facts is relevant to whether defendant knowingly waived his right to counsel. Because the record does not suggest that defendant was informed about the dangers and disadvantages of self-representation, defendant's waiver of counsel was not a "relinquishment or abandonment of a known right or privilege." *Meyrick*, 313 Or at 133. The decision of the trial court should be reversed. Therefore, I respectfully dissent.