Submitted on remand from the Oregon Supreme Court December 8, 1997, reversed
and remanded for new trial February 18, 1998

STATE OF OREGON,
*Respondent,*

*v.*

LEO GEORGE KRAMER,
*Appellant.*

(DCR9313189; CA A83409)

954 P2d 855

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder,

Solicitor General, and David Leith, Assistant Attorney General. With him on the supplemental brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

**DE MUNIZ, P. J.**

Defendant was convicted of prostitution, a Class A misdemeanor. ORS 167.007 (1)(b). We originally vacated the judgment of conviction under *State v. Rudder/Webb*, 137 Or App 43, 903 P2d 393 (1995). The Supreme Court vacated our decision and remanded to us for further consideration in light of *State v. Webb*, 324 Or 380, 927 P2d 79 (1996). We reverse and remand.

Defendant was at a bar in Milwaukie on the evening of October 1, 1993. He left the bar to get money from a nearby ATM. Two girls, ages 15 and 16, who had been attending a high school football game, were among several students in the parking lot of a Dairy Queen through which defendant had to pass to reach the ATM. The girls alleged that defendant used the money to ask them to have sex with him, employing lewd language in the process. They called the police, and defendant was arrested.

At trial, defendant waived his right to a jury trial. The court and defendant then engaged in the following colloquy:

"THE COURT: All right. Are you representing yourself?

"[DEFENDANT]: Yes, Your Honor.

"THE COURT: Did you apply for a court-appointed lawyer or do you have enough money to hire one if you want to?

"[DEFENDANT]: I already—well, see, I talked to my regular attorney. Anyway, I decided to go with this—I didn't do it, and I'll answer any questions you've got and get it over with.

"THE COURT: So you know you have a right to have a lawyer, you do have the money to hire one, and you decided that you don't want to have a lawyer; is that correct?

"[DEFENDANT]: Yes, sir.

"THE COURT: I'll find, then, that [defendant] understands he has a right to have a lawyer, that he's been

informed of that, that he's voluntarily choosing not to exercise that right, even though he has the money to hire one, and he's going to go ahead and represent himself.

"All right. You may proceed. Do you want to make an opening statement?

"[PROSECUTOR]: No, Your Honor, I'll waive my opening statement.

"THE COURT: Did you want to make an opening statement or did you prefer to waive?

"[DEFENDANT]: I'd prefer to waive.

"THE COURT: You don't have to make an opening statement; you have the right to remain silent. You don't have to present any evidence; you can just waive your silence."

■ Now represented by appellate counsel, defendant contends that he did not validly waive his right to counsel under both the Oregon and United States Constitutions. Specifically, he argues that the court erred in accepting his waiver of counsel without warning him of the potential pitfalls of self-representation. We begin with the Oregon constitutional claim.[1] *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). We review whether a defendant has validly waived his right to counsel under Article I, section 11, of the Oregon Constitution in light of the circumstances of the particular case. *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992); *State v. Meyer*, 116 Or App 80, 84, 840 P2d 1357 (1992).

■ Defendant asserts that his waiver of counsel was invalid because the trial court failed to ensure that he understood the risks of self-representation in that it failed to conduct "[a] colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation." *Meyrick*, 313 Or at 133. He also relies on *State v. Curran*, 130 Or App 124, 880 P2d 956 (1994), for the specific rule that a "court must provide some

---

[1] Because that claim is dispositive here, we do not reach defendant's claims under the United States Constitution.

information [to a criminal defendant] about the dangers of self-representation." *Id.* at 127.

The state points out that such a colloquy is merely the "preferred means" of assuring that a defendant understands the risks of proceeding *pro se* and argues that, under the "totality of the circumstances of the case,"

> "[t]he failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." *Meyrick*, 313 Or at 134.

We agree with the state that the "totality of the circumstances" must be considered in determining if a waiver of counsel was knowing and intelligent. As to whether defendant was sufficiently warned about the dangers of self-representation here, the state argues:

> "When, on the day of trial, defendant told the court that he had consulted his attorney about the case and had decided to appear *pro se*, the court was entitled to infer that counsel warned him about the difficulties and dangers inherent in that decision."

However, the record does not establish what defendant's counsel may have said regarding self-representation, and the trial court found only that defendant knew he had a right to counsel. The state further argues that, because defendant heard the court comment "about the advisability of being represented by counsel" to another criminal defendant the day he was arraigned, we can infer that defendant's waiver was valid. We rejected a similar argument in *State v. Mendonca*, 134 Or App 290, 293, 894 P2d 1247 (1995), where we held that

> "the trial court had an obligation to assure itself *on the record* before trial that [the] defendant was adequately informed about her right to counsel, including the risks involved in appearing before a jury without counsel[.]" (Emphasis supplied.)

Both *Curran* and *Mendonca* reiterate that the warning of the dangers of self-representation is not one of the "particular piece[s] of information" that were deemed dispensable in *Meyrick*. *See also State v. Chambers*, 150 Or App 336, 340, 946 P2d 300 (1997) (waiver invalid where trial court did not warn the defendant of the dangers of self-representation). We find nothing in the record from which it can be inferred that defendant was ever warned of the dangers of self-representation. Neither the details of defendant's prior communication with his attorney nor the dialogue between the court and another criminal defendant at the arraignment are part of this record. The state asks us to make too many inferences here, given the paucity of even a suggestion in the record that defendant was warned, let alone understood, the dangers of self-representation. The trial court erred in accepting defendant's waiver of counsel.

Reversed and remanded for new trial.