Argued and submitted May 31, reversed and remanded for new trial July 12, 2000

## CITY OF LAKE OSWEGO,
*Respondent,*

*v.*

## THOMAS DARREL STAFFORD,
*Appellant.*

(MCA9712336; CA A100477)

7 P3d 725

Susan F. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Kaye McDonald, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Ann Kelley, Assistant Attorney General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

### BREWER, J.

Defendant's appeal from his conviction for driving under the influence of intoxicants (DUII) presents a variation on a recurring issue in criminal cases: whether the trial court was required to determine that defendant, who appeared *pro se* on the day of trial, knowingly and intelligently waived his right to counsel. Because we conclude that the trial court erred in failing to make the necessary determination, we reverse and remand.

While represented by retained counsel, defendant was prosecuted and convicted of DUII in municipal court. In May 1997, defendant appealed his conviction to circuit court. ORS 157.010. In September, defendant's attorney moved to withdraw in the circuit court proceeding. The court granted counsel's motion following a hearing on November 3, at which defendant did not appear. Counsel advised the court that defendant was given notice of the motion. The court instructed counsel to "send one more notification to [defendant] and tell him that he's going to have to—if he wants to have a lawyer, he's going to have to get hooked up with one before [the trial] date so he'll be ready to go."

Defendant appeared without counsel on December 2, the scheduled trial date. At the outset, the following discussion occurred between the court and defendant:

"THE COURT: You're Mr. Stafford?

"[DEFENDANT]: Yes.

"THE COURT: And are you representing yourself, sir?

"[DEFENDANT]: Well, I was interested in having an attorney. My deal with retaining them is evidently not as— fell through.

"THE COURT: Well, Mr. Howlett, is that who you're referring to?

"[DEFENDANT]: Yeah.

"THE COURT: He contacted our chambers this morning and indicated that he was not, in fact, retained on this case, and he just wanted to make it clear that he wasn't planning on appearing. Is that the gist of the conversation?

"[COURT CLERK]: He had not been retained.

"THE COURT: So at this point we're ready to proceed?

"[PROSECUTOR]: We're ready. We have our witnesses here.

"THE COURT: We've got a jury waiting downstairs. We need to at this point move forward on this.

"[DEFENDANT]: Okay."

Defendant represented himself throughout his trial and sentencing. During closing argument, defendant stated that he learned on the morning of the first day of trial that he "wasn't going to get a postponement * * * I called the court-house at 8:30. They said be here at nine." At several points during the trial, defendant did refer to conversations he had about the case with various attorneys. However, nothing in the record shows that defendant moved for a continuance in order to secure counsel or that he discussed the subject with the court. During the trial, the court also commented on a few of the practical difficulties posed by defendant's self-repre-sentation, but those comments were made in the context of explaining a procedural ruling that it had made. The court never inquired as to the efforts defendant had made to secure counsel and never engaged in a colloquy with defendant about the risks of proceeding without counsel. After a two-day jury trial, defendant was convicted of DUII.

The only issue on appeal is whether the trial court erred in allowing defendant to proceed *pro se* without first determining that his decision to do so was made knowingly and intelligently. Defendant relies on both the Oregon and United States Constitutions in contending that he did not validly waive his right to counsel.

■■■ We begin with the Oregon constitutional claim. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). Article I, section 11, of the Oregon Constitution, requires that a defendant's waiver of the right to counsel must be knowing and intelligent. A "colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand[s] the risks of self-representation." *State v. Meyrick*, 313 Or 125, 133, 831 P2d

666 (1992). The record as a whole must be consulted in determining whether a waiver of counsel was knowing and intelligent. *Id.* at 134.

 The city does not contend that the trial court advised defendant of the risks of self-representation but, instead, makes several alternative arguments to the effect that no such discussion was required. The city first asserts that the trial court was not required to engage in a "useless" discussion with defendant about the dangers of self-representation, because the record shows that defendant had already made a motion to postpone the trial, which the court must have denied. It is true that, in specifically considering a *pro se* defendant's request for a postponement to secure counsel, the trial court need not determine whether the defendant has knowingly and intelligently waived counsel. *State v. Fiala*, 107 Or App 193, 196-97, 810 P2d 1344 (1991). Instead, the defendant's right to counsel must be balanced against the city's need to conclude a case in a timely manner. *Id.* at 197. In exercising its discretion, the trial court should consider on the record whether the defendant had an adequate opportunity to secure counsel, whether the defendant failed to obtain counsel as a result of his or her own actions, and whether the city would be prejudiced by a delay. *See State v. Schmick*, 62 Or App 227, 232, 660 P2d 693, *rev den* 295 Or 122 (1983). We review the trial court's decision for abuse of discretion. *State v. Lingren*, 79 Or App 324, 327, 719 P2d 61 (1986) (applying same rule to defendant who was " 'stroking' the system").

The city acknowledges that "[n]o motion to postpone, oral or written, is in the record," but asserts, nonetheless, that the record "shows that defendant made that sort of motion." We disagree. Defendant's reference in closing argument to his hope that he would receive a postponement did not establish that he had made an "off the record" motion for a continuance and that the court had considered and denied the motion off the record. It is plausible that defendant was simply discouraged from making such a motion because a court employee told him to appear at 9:00 a.m. We cannot speculate that the events on which the city relies actually occurred. *State v. Kramer*, 152 Or App 519, 523, 954 P2d 855 (1998).

The city argues, alternatively, that whether or not defendant moved to postpone the trial is academic because, if such a motion had been made, the court would have been free to deny it. Thus, the city reiterates, any discussion of the dangers of self-representation would have been pointless. We disagree. As noted, the record does not disclose that such a motion was made. Therefore, the record is lacking the full range of information that would have facilitated the exercise of judicial discretion in considering it, such as the degree of effort defendant spent in obtaining new counsel and the extent, if any, to which the city would have been prejudiced by a postponement. *See Schmick*, 62 Or App at 232. The fact that defendant's former attorney was permitted to withdraw more than 30 days before trial would certainly have been an important consideration in deciding a motion to postpone, but it would not have been the only relevant factor. *Id.*

■ In sum, we are not called on to review a trial court's decision whether to postpone the trial. Instead, the issue in this case is whether and how the trial court was required to determine if defendant's election to represent himself was made with the requisite understanding. The circumstances in *Fiala* are particularly instructive. There, the defendant appeared *pro se* on the day of trial. Before trial commenced, the following discussion occurred:

"THE COURT: I assume you've been apprised of your rights to an attorney?

"[DEFENDANT]: Yes, sir.

"THE COURT: I take it you've decided you will try this case by yourself?

"[DEFENDANT]: Actually, your Honor, that was one of the motions I had for pretrial is I'm not here by my own willingness to be here without an attorney. I've been denied an attorney. I was at one point appointed a court-appointed attorney. I was found to have had a credit card. Because of that credit card, that court-appointed attorney was taken away.

"I do not have means, other than a credit card, to hire an attorney. The limit on that credit card did not reach the limit that the attorney I consulted [said] would be the fees for this case.

"THE COURT: There were attorneys, I'm sure, you might have consulted with that might have accepted it.

"[DEFENDANT]: I contacted five attorneys. Four of them could not take the case because of prior commitments. But that is as far as I went. *I am prepared to continue today.*" 107 Or App at 195-96 (emphasis added).

In response to the city's argument that the trial court was not required to explain the risks of self-representation to the defendant, we said:

"In *Schmick* and *Lingren*, the question was whether the court had abused its discretion by forcing the defendants to proceed to trial without counsel and in refusing to allow a continuance so that the defendants could hire counsel. Their holdings are premised on the proposition that the right to counsel must be balanced against the state's need to conclude a case in a timely manner. In contrast, defendant here made no motion for postponement of the trial.

"The initial colloquy between the court and defendant constituted a renewal of defendant's request for a court-appointed attorney and the court's denial of that request. Defendant then elected to represent himself and did not request a continuance to hire his own counsel. * * * [T]he court was required by Article I, section 11, of the Oregon Constitution to determine whether defendant's election was made with the requisite understanding. Because the trial court did not make that determination, the conviction must be reversed." *Id.* at 196-97 (footnote omitted).

Here, defendant did essentially the same thing that was done by the defendant in *Fiala*; he capitulated to the court's direction to proceed to trial, which under the circumstances, resulted in his self-representation. The trial court did not discuss that choice with defendant and, thus, did not use the *preferred* means of determining whether defendant had adequately waived his right to counsel.

The only remaining question is whether the record as a whole discloses that defendant adequately waived counsel. *Meyrick*, 313 Or at 133-34; *State v. Brenner*, 151 Or App 159, 167, 947 P2d 1139 (1997). The city argues that, because the judge who heard the pretrial motion to withdraw told defendant's former lawyer to send him a notice to obtain counsel and because defendant nevertheless appeared *pro se,*

we may infer from the record as a whole that he knowingly and intelligently waived counsel. The city compares the circumstances here with those in *State v. Brown,* 141 Or App 156, 162-63, 917 P2d 527, *rev den* 323 Or 691 (1996). However, *Brown* is distinguishable. There, the record showed that the court had engaged in an extensive colloquy with the defendant about self-representation at his arraignment. *Id.* at 158-60. The defendant signed a written waiver of counsel on the same day. *Id.* at 159. On the day of trial, the court asked the defendant why he was unrepresented and the defendant told the court that he preferred to defend himself. Before accepting that decision, however, the trial judge explained to the defendant the potential sentences for the charges he faced. We held that "[t]he record as a whole show[ed] that defendant knew of his right to counsel and that he intentionally relinquished that right because he believed that no attorney with whom he had talked would work in his 'best interests.'" *Id.* at 162.

The record in this case reveals no meaningful colloquy at any stage of the proceedings between the court and defendant about his self-representation, let alone a written waiver of counsel. The record simply does not establish that defendant understood the risks of self-representation. *See State v. Massey,* 160 Or App 197, 199-200, 981 P2d 352 (1999) (distinguishing *Brown* by, among other reasons, the fact that the record in *Massey* did not disclose any colloquy between court and defendant, and defendant's prior representation by counsel did not establish that anyone told him about risks of representing himself). Because we cannot conclude on this record that defendant knowingly and intelligently waived his right to counsel, his decision to proceed to trial without an attorney was not adequate under Article I, section 11, of the Oregon Constitution.

Reversed and remanded for new trial.