Argued and submitted October 31, 2000, affirmed February 14, 2001

# STATE OF OREGON,
*Appellant,*

*v.*

# DAVID ALLEN JACKSON, JR.,
*Respondent.*

## (20-98-13446; CA A106513)

19 P3d 925

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Monica L. Finch, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, State Public Defender.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

HASELTON, P. J.

Wollheim, J., concurring.

## HASELTON, P. J.

The state appeals from an order of suppression in a prosecution for felony driving while suspended (DWS), ORS 811.182, and misdemeanor hit-and-run, ORS 811.700. The trial court suppressed evidence of defendant's prior conviction for driving under the influence of intoxicants (DUII), which underlies the suspension of his driving privileges, on the ground that defendant had not knowingly and voluntarily waived counsel before pleading guilty to DUII. The state challenges, particularly, the trial court's determination that an "Acknowledgment of Rights" form defendant executed in the prior DUII proceeding was insufficient to establish a valid waiver of counsel because that form did not adequately describe the risks associated with self-representation. We affirm.

On August 18, 1997, defendant was arraigned and pleaded guilty to DUII in Florence Justice Court. When he appeared before the court to enter his plea, defendant signed a form "Acknowledgment of Rights at Arraignment and Entry of a Plea." That form stated, in pertinent part:

> "I am now appearing without counsel. I affirm my rights have been reviewed with me and I understand my rights as follows. I understand if I plead guilty or no contest I give up these rights.
>
> "* * * * *
>
> "2. My right to have an attorney present to represent me at such trial, and the right to receive Court-appointed counsel if I cannot afford to retain an attorney.
>
> "* * * * *
>
> "I understand there may be advantages to being counseled by an attorney and disadvantages by self-representation. I understand there may be defenses available to me of which an attorney could advise me."

On August 28, 1997, defendant appeared for sentencing and, at that time, executed an identical "Acknowledgment of Rights" form. As a result of his DUII conviction, defendant's driving privileges were suspended for one year.[1]

---

[1] Because the Florence Justice Court is not a court of record, there is no contemporaneous record of the 1997 DUII proceedings, other than the written

In June 1998, while his driving privileges were still suspended, defendant was charged in Lane County Circuit Court with felony DWS and misdemeanor hit-and-run. Defendant filed a motion *in limine* to exclude evidence of his DUII conviction, asserting that he had not knowingly and voluntarily waived his constitutional right to counsel[2] before entering his guilty plea. *See State v. Hardt*, 81 Or App 607, 611-12, 726 P2d 953 (1986), *adhered to on recons* 83 Or App 221, 730 P2d 1278 (1986), *rev den* 303 Or 74 (1987) (allowing collateral attack on two DWS convictions that were based on a void DUII conviction).[3]

At the hearing on that motion, defendant testified that the written form constituted the only information he received from the court regarding the right to counsel. In particular, the Florence Justice Court never engaged in any oral colloquy regarding the written waiver of counsel:

> "After they talked [mainly] about my payments and what I should do * * * I just agreed to pay, you know a certain amount every month and go through another program. Pretty much after that was done and over with it was sign here, sign that and we'll be on our way."

Defendant acknowledged, under cross-examination, that he usually reads things before he signs them; that he knows what an "advantage" and "disadvantage" are; and that he knows the term "self-representation" means "without an attorney." However, when he was asked whether, when he signed the "Acknowledgment of Rights" form, he had any idea what the language regarding disadvantages of appearing without counsel meant, he replied, "I didn't know that I

---

"Acknowledgment of Rights" forms, a notation of conviction and sentence entered on the back of the traffic citation, and the judgment and order that, *inter alia*, suspended defendant's driving privileges.

[2] Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel."

Similarly, the Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

[3] The state does not dispute defendant's ability to collaterally attack the DUII conviction in this DWS proceeding.

was even there. It was like I said before, we just, you abbreviate your name here and sign here."

The trial court granted defendant's motion *in limine* to exclude evidence of the DUII conviction. In its letter opinion, the court first emphasized the limited record of the circumstances of defendant's waiver:

> "Here there's no record of any verbal exchange, other than what was testified to, between the [Florence Justice Court] and the defendant on the record, because the proceedings were not before a court of record, and so that means that the record and the written record, and any added testimony that the court heard here today, needs to demonstrate that this was a knowing waiver, as far as the voluntariness."[4]

The court then concluded that the record failed to establish that defendant understood the risks of self-representation at the time he waived counsel in the DUII proceeding and, as a result, evidence of defendant's DUII guilty plea and consequent conviction must be excluded:

> "What the cases appear to say is that the defendant must understand what the risks are of self-representation. *It's not enough for the court to say in a conclusionary manner that there are risks, but the court must at least set forth what some of those risks are; and must warn the defendant of what the dangers are of self-representation, not just that there generally are dangers of self-representation.* * * * However, the court here finds that what was given, on the record, to this Defendant was not sufficient, that there was not an adequate understanding, that could be set out on the record, of the potential pitfalls of self-representation. There is nothing about such things as: what an attorney could give as advantages to the defendant; could investigate, could obtain witnesses, could obtain evidence, could plea bargain with the district attorney's office or the, whoever the enforcing government agency was, or that the attorney knows courtroom procedure, could explain that to the defendant, or that the attorney could argue the case in a way that would be beneficial to the defendant, or that the attorney would know how to handle a sentencing, as well, and that

---

[1] The court noted that, although defendant testified in the *in limine* hearing, no evidence was adduced as to his "age, his experience and education, and mental capacity," and that, from defendant's testimony, "the court did not perceive any specific information regarding those factors."

because of their legal experience and training, an attorney would be able to assist the defendant in many ways, other than those just explained. None of those things were set out. There is no record that sets out what specific pitfalls, if any, and disadvantages there would be to the defendant to represent himself." (Emphasis added.)

On appeal, the state challenges the trial court's determination that the totality of the circumstances of the DUII proceeding—and specifically defendant's execution of the "Acknowledgment of Rights" form—was inadequate to establish a knowing waiver of counsel. The state argues, particularly, that the written waiver form sufficiently alerted defendant to the risks of self-representation:

"The court set the standard for a knowing and intelligent waiver of counsel too high. A waiver need not be preceded by recitation of a list of the specific advantages of being represented by an attorney and the disadvantages of not being; it is enough if the defendant is informed that there *are* advantages and disadvantages. So long as the defendant is aware that he has the right to counsel, is aware that having counsel could be helpful, is aware that waiving counsel could be disadvantageous, and voluntarily waives that right—as was the case here—the waiver is valid."

Defendant counters that, under *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992), and related cases, the dispositive consideration is whether the defendant sufficiently *understood* the risks of self-representation and that here, particularly without the assurance of a colloquy between the DUII court and defendant, the trial court was entitled to find that defendant's execution of the written form did not, by itself, establish the requisite understanding.

Since the Supreme Court decided *Meyrick* in 1992, we have issued 16 published opinions addressing the validity of waivers of counsel.[5] That profuse precedent notwithstanding, this case is remarkable in two respects. *First*, in no other

---

[5] *City of Lake Oswego v. Stafford*, 169 Or App 179, 7 P3d 725 (2000); *State v. Quintero*, 162 Or App 674, 986 P2d 665 (1999); *State v. Aguirre*, 160 Or App 649, 982 P2d 1140 (1999); *State v. Massey*, 160 Or App 197, 199, 981 P2d 352 (1999); *State v. Richardson*, 159 Or App 592, 978 P2d 435, *rev den* 329 Or 479 (1999); *State v. Kramer*, 152 Or App 519, 954 P2d 855 (1998); *Jones v. Maass*, 144 Or App 574, 928 P2d 351, *rev den* 326 Or 464 (1998); *State v. Chambers*, 150 Or App 336, 340, 946 P2d 300 (1997); *State v. Brown*, 141 Or App 156, 917 P2d 527, *rev den* 323 Or 691 (1996); *State v. Mendonca*, 134 Or App 290, 293, 894 P2d 1247 (1995) (*Mendonca*

case was a written form the only evidence on the record of waiver of counsel.[6] *Second*, with one exception, those cases are all direct appeals from criminal convictions, where the validity of the waiver of counsel was raised for the first time on appeal.[7] Here, in contrast, we are reviewing a trial court's express determination of the validity of a waiver of counsel in a collateral proceeding.

■ In that collateral attack context, the state bore the burden of proving that defendant had validly waived counsel in the DUII prosecution. *State v. Luttrell*, 80 Or App 771, 775, 723 P2d 1071 (1986) ("[O]nce a defendant shows that he was not represented at the time of a prior conviction, and the state intends to rely on that conviction * * * [the state] must establish that there was a waiver of counsel. Here, defendant presented evidence that he had been without counsel in the prior case, and it became the state's burden to show a valid waiver."). *See also State v. Manfedonia,* 105 Or App 537, 540, 805 P2d 738 (1991); *State v. Winkler,* 80 Or App 455, 456, 722 P2d 59 (1986). Here, the trial court determined that the state had not met that burden.

*II); Pearson and Pearson,* 136 Or App 20, 23, 900 P2d 533 (1995); *State v. Curran,* 130 Or App 124, 127, 880 P2d 956 (1994); *State v. Mendonca,* 129 Or App 463, 879 P2d 233 (1994) *(Mendonca I); State v. Rochefort,* 129 Or App 296, 878 P2d 1111 (1994); *State v. Meyer,* 116 Or App 80, 83, 840 P2d 1357 (1992); *State v. Solz,* 115 Or App 702, 839 P2d 763 (1992).

⁶ *State v. Brown* is the only reported Oregon case in which a written waiver of counsel is mentioned. 141 Or App at 159. That form waiver stated:

"I hereby waive my right to an attorney in the above entitled proceeding and wish to represent myself. I understand that if I am indigent the court would appoint an attorney to represent me." *Id.*

Our opinion in that case, however, did not analyze the sufficiency of that document, and our resolution there did not consider that form alone to be dispositive of a valid waiver. *Id.* at 162. Rather, we considered that form as one of many factors that led us to conclude that "the record as a whole" demonstrated a valid waiver of counsel, despite the absence of any *Meyrick*-type colloquy. *Id.*

⁷ That exception is *Jones v. Maass,* 144 Or App 574, a post-conviction relief case in which the defendant alleged inadequate assistance of counsel based on his appellate counsel's failure to raise, on direct appeal, the validity of defendant's waiver of counsel at his criminal trial. In *Jones,* we held that petitioner's waiver was valid because, *inter alia,* he had been admonished by the trial court of the folly of representing himself, had chosen to ignore that advice, and had lengthy conversations with appointed counsel's office regarding "how helpful an attorney could be" before choosing to represent himself. *Id.* at 578-79. Because the defendant had validly waived counsel, we held that he was not denied effective assistance of counsel when his appellate counsel failed to raise the issue on direct appeal.

The trial court's inquiry was, ultimately, subjective, not objective. That is, the issue before the trial court was *not* whether, in the totality of the circumstances, an objectively reasonable defendant should have, or would have, sufficiently appreciated the risks of self-representation. Rather the matter to be decided was whether *this* defendant possessed the requisite understanding at the time he waived counsel. *Meyrick*, 313 Or at 132 ("The trial court should focus on what *the defendant* knows and understands.") (emphasis in original); *accord State v. Massey*, 160 Or App 197, 199, 981 P2d 352 (1999) (refusing to infer a knowing waiver from a defendant's prior work as a paralegal, prior involvement in civil lawsuits, and prior representation by several lawyers in the absence of any indication that the defendant actually "understood the risks of self-representation").

Underlying that ultimately subjective determination were, and are, both legal and factual elements. The legal component involved a determination of *what* a defendant must understand—that is, what constitutes a legally sufficient appreciation of the risks of self-representation. The factual component requires a finding of *whether* the particular defendant in fact understood the requisite "what." That, in turn, may also require findings as to the particular circumstances of the waiver—the defendant's age and experience, the information conveyed to the defendant, the defendant's responses, if any—from which the defendant's subjective state of mind can reasonably be inferred.

■■ Thus, in reviewing the trial court's determination here, we must engage in two distinct inquiries. First, as a matter of law, did the trial court apply the correct legal standard in assessing whether defendant had a sufficient understanding of the risks of self-representation? Second, if the court employed the correct legal standard, did it err in finding that, in the totality of the circumstances, the state had failed to prove that defendant did, in fact, understand the risks of self-representation? We will affirm that factual/subjective determination if it is supported by any evidence in the record. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968).[8]

---

[8] *Ball v. Gladden*, is analogous in two material respects. First, *Ball*, a post-conviction case, also involved our review of a trial court's disposition of a collateral

**4, 5.** We first address whether the trial court applied the correct standard of legally sufficient "understanding." In *Meyrick*, the court observed:

"The 'known right' component of a waiver has nothing to do with the 'intentional' component. It refers to a defendant's knowledge *and understanding* of the right to counsel. It encompasses 'intelligent and competent,' 'intelligently,' and 'knowingly and intelligently.' This is the more expansive of the two components, because a defendant's knowledge and understanding of the right to counsel and of the dangers and disadvantages of self-representation may turn on things other than on what the court tells the defendant, such as the defendant's age, education, and experience and the complexity of the charges and possible defenses." *Meyrick*, 313 Or at 132 n 8 (emphasis added).

The court further described the "preferred"—but not exclusive or mandatory—means of corroborating that a defendant does, in fact, possess the requisite understanding:

"A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate." *Id.* at 133.[9]

Finally, however, the *Meyrick* court held:

---

attack on a criminal conviction. Second, the issue at stake in *Ball*—namely, whether the defendant voluntarily confessed—is structurally and analytically similar to the mixed question of fact and law presented here. *See State v. Knoch*, 86 Or App 15, 20, 738 P2d 979 (1987) (validity of a waiver of the right to counsel in the interrogation context ordinarily is reviewed as a "mixed question of fact and law").

[9] In so stating, the *Meyrick* court noted that a particularly effective method of ensuring a defendant's understanding "is to have the defendant repeat the essence of the information or explain his or her understanding of it to the court." 313 Or at 133 n 9. That is so because:

"Leading questions put to a defendant may be answered in the affirmative without actual understanding. Thus, courts should strive to demonstrate on the record that a defendant understands the implications of the waiver." *Id.*

"Article I, section 11, does not require a catechism by the trial court, however, before the right to counsel may be validly waived by a defendant. The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." *Id.* at 134.

Thus, *Meyrick* does not require that a defendant know and completely appreciate every potential risk of self-representation in his or her case. Nor does *Meyrick* prescribe particular risks that a defendant must understand—instead, the court's "no catechism" language explicitly disclaims such a formalistic approach. Conversely, however, a defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient. Rather, "understanding" for *Meyrick* purposes means more than merely being generally aware that there may be unspecified risks but less than knowing all the potential risks. "Understanding" under *Meyrick* means that a defendant, in the totality of the circumstances, substantially appreciates the material risks of self-representation in his or her case.

Our post-*Meyrick* decisions conform to that principle. *See, e.g., Richardson,* 159 Or App at 600-01 (court's statement that "a lawyer may be able to assist you in challenging the indictment" insufficient under *Meyrick*); *Chambers,* 150 Or App at 340 (instructing a *pro se* defendant as to the importance of subpoenaing witnesses and that he should "get some help from an attorney or somebody on how to make sure you get that done" inadequate to assure that defendant was aware of the risks of self-representation); *Meyers,* 116 Or App at 84 (warning to a *pro se* defendant that jury trials are "kinda tricky," was "insufficient information to make an informed decision to forego counsel").

Here, the trial court applied that standard of legally requisite "understanding." As noted, the court's exclusion order flowed from the premise that:

"It's not enough for the court to say in a conclusionary manner that there are risks, but the court must at least set forth what some of those risks are; and must warn the defendant of what the dangers are of self-representation, not just that there generally are dangers of self-representation."

The question then reduces to whether the trial court erred in finding that the state failed to prove that defendant did, in fact, possess the requisite understanding.

■    The only evidence that the state adduced of defendant's knowledge of the risks of self-representation was the two identical waiver forms. Those forms referred generally to potential "advantages" of representation by counsel and "disadvantages" of self representation, and also referred to an attorney's ability to advise the defendant of potential defenses. The state offered no evidence of any colloquy between the Florence Justice Court and defendant concerning the waiver of counsel—or, for that matter, any evidence of any practice by the justice court to engage in colloquies with defendants who executed written waivers. Nor did the state present any evidence as to defendant's education, mental capacity, or experience, particularly prior experiences with the legal system or consultations with counsel, that would be probative of defendant's appreciation of the material risks of self-representation. *See, e.g., Meyrick,* 313 Or at 135-36 (inferring the requisite understanding from the defendant's prior consultation with counsel); *Mansfield v. Gladden,* 249 Or 504, 507, 439 P2d 611 (1968) (same); *Brown,* 141 Or App at 163 (inferring from defendant's repeated requests for an attorney and expressed desire to avoid representing himself that defendant fully recognized the disadvantages of self-representation: "[D]efendant intended to retain an attorney * * * was encouraged by the trial court to retain an attorney, spoke to attorneys and ultimately decided to represent himself. Based on those facts, we conclude that defendant knew of his right to counsel.").

On this barren record, the trial court did not err in excluding evidence of defendant's DUII conviction. The trial court could properly declined to infer from defendant's mere execution of the waiver forms that defendant did, in fact, sufficiently understand the risks of self-representation when he

waived counsel in the DUII case. In particular, the court could properly find that, given the generalized language of the written waiver, defendant's execution of those forms showed only that defendant knew, in some amorphous way, that there might be risks to self-representation, without any real understanding of what the particular risks might be.

In so concluding, we emphasize the limited scope of our holding. We do not imply that written waivers of counsel are necessarily insufficient or that such waivers, to be sufficient, must be coupled with some confirmatory oral colloquy. *Accord Meyrick*, 313 at 133 (colloquy is *"preferred* means of assuring that the defendant understand the risks of self-representation") (emphasis added). To the contrary, as our decisions have consistently stressed, the assessment of a defendant's understanding is to be based on the totality of the circumstances. Thus, depending on a defendant's experience or on the content of the written form—the extent to which it clearly and specifically identifies material risks of self-representation—knowing waivers may be inferred from execution of a written waiver. Under the circumstances here, however, the trial court properly declined to infer the requisite understanding.

The trial court did not err in excluding the evidence of defendant's uncounseled DUII conviction.

Affirmed.

**WOLLHEIM, J.,** concurring.

I concur in the analysis and result of the majority opinion. I write only to emphasize the limited scope of our holding, lest we see a plethora of collateral attacks on the written waivers of counsel used by justice courts throughout Oregon.

Our result in this instance is substantially due to several factors worth repeating. The first factor is the extremely limited record of the circumstances concerning defendant's waiver at the Florence Justice Court. The second factor is the total lack of evidence concerning defendant's age, experience and education, and mental capacity presented to the trial court. The final factor concerns the great deference we accord the trial court's determinations in instances such

as this. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). Without elaborating on those factors, it is worth observing that it is their combined effect in this instance that leads us to the result we reach.

As the majority recognizes, this case is remarkable. 172 Or App at 419. Likewise, I believe the result here, which is the correct one, is similarly remarkable.