Argued and submitted October 31, 1996, reversed and remanded February 5, 1997

# STATE OF OREGON,
## *Respondent,*

### *v.*

# DAVID ALLEN TAYLOR,
## *Appellant.*

## (CR4-1317, CR4-1720; CA A89511 (Control)
## and CA A89512)

933 P2d 350

Alan H. Biedermann, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert B. Rocklin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

This is a consolidated appeal from two cases in which defendant was convicted of two counts of criminal trespass in the second degree, ORS 164.245, in the first case, and of criminal trespass in the second degree, harassment, ORS 166.065, and disorderly conduct, ORS 166.025, in the second case. He argues that he did not voluntarily and intelligently waive his right to counsel under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. We reverse and remand.

The first case stemmed from an altercation defendant had at St. Charles Medical Center in Bend, in which he refused to leave the hospital, insisting that the hospital was obligated to provide him with a place to stay. On June 8, 1994, defendant was arraigned on charges of criminal trespass in that case. At that time, the trial court found defendant to be indigent and appointed Mark Reinecke to represent him. The second case arose from a separate altercation on July 25, between defendant and police officers at the Deschutes County Justice Building and Courthouse. Reinecke was a witness to defendant's conduct and, consequently, filed a motion to withdraw as counsel on July 26.

On July 26, defendant was arraigned in the second case. Reinecke, whose motion to withdraw was pending, did not appear on that date with defendant, but another attorney from Reinecke's office, McLean, was present. At the arraignment, the following discussion occurred:

"THE COURT: This is the *State of Oregon v. David Allen Taylor.* Is that your true name, Mr. Taylor?

"DEFENDANT: Yes, sir.

"THE COURT: And are you going to ask us to appoint a lawyer for you? You really should be talking with a lawyer for advice. I mean, obviously, you're in a situation where you need some advice, being in jail. You're charged with criminal trespass, harassment and disorderly conduct. Are you going to hire a lawyer, or ask us to appoint a lawyer for you?

"DEFENDANT: I can't afford an attorney, really, not with being —

"THE COURT: Oh, I realize that, so we would appoint a lawyer for you, contingent on your filling out the form and qualifying, we'll appoint a lawyer for you. * * *

"DEFENSE COUNSEL [McLean]: Your Honor, I would like the record to reflect that Mr. Taylor has, on the record, indicated a conflict with my representing him. I'm willing to do so for purposes of this arraignment only, but I would have to have his consent to that. He's represented by a member of our group now. I forget which one of the gentlemen is representing him.

"THE COURT: Who represents you now?

"DEFENDANT: Could I intervene? I don't know if Mr. Reinecke is still here after what happened yesterday.

"THE COURT: Mr. Reinecke is still there.

"DEFENDANT: You know, I've had a lot of problems with the court-appointed attorneys here in Deschutes County. I really have. And I've had problems with the court system in Oregon. I mean, I feel like it's—. I'd rather have my hearing or whatever in another state. I'm tired of this.

"THE COURT: Well, I can't help you out there, although I suppose if we could accommodate you, we would, but we can't do that. You really should talk with a lawyer for advice. If it turns out that you and Mr. McLean have some conflict, or if you and Mr. Reinecke have some conflict, I'm sure that they might direct your case to another district court defender's lawyer."

On August 19, the court allowed Reinecke's motion to withdraw and appointed David Pritchard as substitute counsel for defendant in both cases. The cases were consolidated for trial.

On October 18, the state made a motion requesting that defendant be evaluated for "fitness to proceed to trial under ORS 161.365." In an affidavit, counsel for the state said:

"I have observed Mr. Taylor in court on several occasions. I have spoken with witnesses that have observed Mr. Taylor on several occasions. One of these witnesses is a medical doctor. The concern expressed by all is that of Mr. Taylor's fixation on the State of Oregon owing him or having a duty to support him because of an injury some years ago. This

fixation seems to be Mr. Taylor's rationale for violating laws to get what he thinks is owed him by the State."

The court granted the motion, and Dr. Geoffrey Hyde evaluated defendant for purposes of determining whether defendant understood the nature of the charges against him and whether he had the ability to cooperate meaningfully with his attorney in his own defense. In a medical report, which is included in the trial court record, Hyde concluded:

"Although [defendant] understands the nature of the charges against him, his one-sided view of the world and his explosive interpersonal style make it very hard for him to participate meaningfully in the court process. I would strongly recommend that he have a period of hospitalization during which, with appropriate treatment, it may be possible for him to adopt a more rational and balanced view of the world, and thereby be better able to stand trial sometime in the future."

On November 30, 1994, the trial court held a fitness hearing and concluded that defendant was fit to proceed to trial. There is no record of that proceeding other than a docket notation.

For various reasons not pertinent to this appeal, defendant's trial on both cases did not occur until April 20, 1995. Before trial, Pritchard moved to withdraw as defendant's attorney "as Defendant has requested this withdrawal," and the trial court granted that motion.[1] Thus, at the time of trial, defendant was not represented by counsel.

The trial was conducted by a judge who had not participated in any of the prior proceedings. At the beginning of trial, the following colloquy occurred:

"THE COURT: There's a couple of things I want to talk about before we bring the jury in. One, I guess, Mr. Taylor, you're representing yourself. Do you have any idea about the procedure that we go through on a jury trial?

---

[1] There is no record of any hearing on Pritchard's motion to withdraw. There is, particularly, no indication in the record that defendant appeared before the court on that matter or that the court, in granting the motion, ever advised defendant of the risks of self-representation.

"DEFENDANT: Not really. I've been denied effective assistance of counsel so I have no other alternative. I need medical attention and I don't need to be, you know—

"THE COURT: (interposing) Okay.

"DEFENDANT: * * * I mean, these public defenders being so smart-alecky. I don't need them.

"THE COURT: All right. Well, my understanding is from the file that you've chosen to represent yourself. And so we'll go ahead with the trial.

"So let me take a minute and explain to you, at least, on these preliminary steps about selecting a jury, what we're doing here."

The court thereafter explained the jury selection process to defendant. At no time did the court explain the actual charges against defendant, the possible penalties involved, or "the dangers and disadvantages of self-representation." *State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992).

In the ensuing trial, defendant, at various times, expressed confusion regarding various aspects of trial procedure.[2] The jury convicted defendant on all charges.

■ Defendant assigns error to the trial court's decision to accept his proffered waiver of counsel. He argues that the record does not demonstrate that the waiver was knowing

---

[2] The state makes much of the fact that defendant was able to participate in jury selection, "objected to comments by the prosecutor, cross-examined witnesses, testified in his own defense, and introduced a medical report as evidence." Our review of the record indicates that, while the state's description is strictly accurate, the reality at trial was quite different.

For example, defendant asked three questions of the potential jurors during voir dire: (1) whether any of the jurors had suffered seizures "not brought on by self-induced things;" (2) whether any of the jurors knew what a birth defect was; and (3) whether, "especially with the women, if they've experienced domestic violence. You know, I'm very concerned about that." None of those questions related to the issues or the evidence. Defendant made a single objection, which came during the prosecutor's opening statement when the prosecutor was explaining that the evidence would show that defendant asked the hospital to provide him with overnight lodging: "I object, your honor, I didn't ask for overnight lodging." Defendant's cross-examination of witnesses consisted mainly of asking witnesses, "Aren't you lying * * *," "Aren't you not being truthful when you say * * *," "Aren't you wrong * * *," or "Aren't you mistaken * * *." In introducing the medical report, defendant stated that it was from an industrial accident he suffered in 1984 and "talks about how—the state denied me—that's what the state's trying to deny me now—my rights."

and intentional, as required by Article I, section 11, of the Oregon Constitution.[3] We agree.

*State v. Meyrick* guides our inquiry:

"In determining whether a defendant's waiver of counsel was the intentional relinquishment or abandonment of a known right, the trial court should focus on what *the defendant* knows and understands. This court has never stated precisely what, if anything, a trial court *must* or *should* tell a defendant who pleads not guilty[.] Our cases generally hold only that, to be valid, a waiver must be voluntarily and intelligently made.

"* * * * *

"A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate.

"Article I, section 11, does not require a catechism by the trial court, however, before the right to counsel may be validly waived by a defendant. The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." 313 Or at 132-34 (emphasis in original; footnotes omitted).

■    We have repeatedly acknowledged *Meyrick*'s caveat that "Article I, section 11, does not require a catechism by the trial court." Thus, if the totality of the circumstances discloses that a defendant's waiver was, in fact, knowing and intentional, the trial court's failure to adhere to *Meyrick*'s "preferred means" does not render the waiver invalid and

---

[3] Defendant makes a similar argument under the Sixth Amendment. Because of our disposition, we need not reach that issue.

require reversal. *See, e.g., Jones v. Maass*, 144 Or App 574, 928 P2d 351 (1996) (although the trial court did not explain the dangers of self-representation to the defendant, the record indicated that the defendant was nevertheless aware of them); *State v. Brown*, 141 Or App 156, 917 P2d 527, *rev den* 323 Or 691 (1996) (similarly holding).

Conversely, when the totality of the circumstances raises questions about the defendant's ability to understand the seriousness of the charges or the ramifications of self-representation, it is incumbent on the trial court to make a careful inquiry into the defendant's ability to make an informed choice. That is, the court must engage in a process approximating *Meyrick*'s "preferred means." *See Meyrick*, 313 Or at 135 (emphasizing that a colloquy with the defendant about the dangers of self-representation allows the trial court to assess a defendant's "competency and demeanor and his knowledge of the right to counsel that he [is] relinquishing"); *see also State v. Curran*, 130 Or App 124, 128, 880 P2d 956 (1994) (defendant's "actions at trial and other incidents in the record clearly show that defendant was 'not sophisticated [enough] in court or criminal matters' to make an informed decision about whether to proceed without counsel[;]" thus, the trial court should have warned the defendant in some fashion regarding the dangers of self-representation (quoting *State v. Meyer*, 116 Or App 80, 84, 840 P2d 1357 (1992)).

This is a case in which the trial court was obligated to engage in a careful colloquy with defendant, so as to confirm his appreciation of the risks of self-representation. At the time of trial, the record included Dr. Hyde's evaluation. That evaluation concluded that, although defendant understood the nature of the charges against him, his mental condition would "make it very hard for him to participate meaningfully in the court process." Although defendant had been found competent to stand trial,[4] Hyde's observations and opinion still raised real concerns as to defendant's ability to appreciate the ramifications of conducting his own defense. In particular, defendant's preoccupying paranoia of all who

---

[4] As noted, that determination, which is not challenged on appeal, was by a judge other than the trial judge, who had had no prior contact with defendant in these matters.

stood in authority around him, including those attorneys who could assist him, raised concerns as to his appreciation of the risks of self-defense. Nevertheless, the trial court did not explore those concerns.[5] The court did not explain to defendant *why* he should have an attorney, nor did the court ascertain if defendant otherwise understood the risks of self-representation.

We conclude, from the totality of the circumstances, that defendant did not intentionally relinquish his right to counsel under Article I, section 11. The trial court erred in accepting defendant's proffered waiver of that right.

Reversed and remanded.

---

[5] *Cf. Meyrick*, 313 Or at 133 n 9 ("One method of ensuring that a defendant understands the information given by the court is to have the defendant repeat the essence of the information or explain his or her understanding of it to the court. A criminal trial setting can be an intimidating and frightening place. Leading questions put to a defendant may be answered in the affirmative without actual understanding. Thus, courts should strive to demonstrate on the record that a defendant understands the implications of the waiver. We emphasize, however, that a trial court's failure to follow this suggestion does not require an automatic reversal of a defendant's conviction.").