Argued and submitted January 22, affirmed February 21, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## CLAYTON LAMONT HOWARD,
*Appellant.*

## (97C20238; CA A100057)

19 P3d 369

Elana D. Flynn argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause and filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals from his conviction for possession of a weapon by an inmate. ORS 166.275. Defendant represented himself until the sentencing phase of the trial court proceedings. Although defendant makes four assignments of error on appeal, we address only his contention that the trial court erred in accepting his purported waiver of counsel. Defendant asserts that the waiver was invalid under the Oregon and federal constitutions because the trial court did not advise him on the record of "any of the pitfalls" of self-representation. We affirm.

■ Under Article I, section 11, of the Oregon Constitution,

> "a trial court may accept a defendant's proffered waiver of counsel only if it finds that the defendant *knows* of his or her right to counsel and, if indigent, of his or her right to court-appointed counsel, and that the defendant *intentionally* relinquishes or abandons that right." *State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992) (emphasis added).

The Sixth Amendment to the United States Constitution imposes a similar requirement. *Id.* at 137. Although defendant does not dispute that he intentionally relinquished his right to counsel, he argues that he did not do so knowingly. We turn to the trial court record with that issue in mind.

Defendant was serving a lengthy sentence at the Oregon State Penitentiary when a corrections officer found razor blades hidden in his cell. This prosecution ensued. At defendant's arraignment on March 14, 1997, the following discussion occurred:

> "THE COURT: All right. Mr. Howard, you have the right to an attorney. And apparently you do not have an attorney at this time; is that correct?
>
> "DEFENDANT: I don't want one. I represent myself.
>
> "THE COURT: Okay. This is a felony charge, [prosecutor]. Can you tell me [the] maximum sentence as an unclassified felony, [ORS] 166.275?
>
> "[PROSECUTOR]: I believe it is, Your Honor.

"THE COURT:   Do you know the maximum? I'd like to advise Mr. Howard exactly what the maximum is.

"[PROSECUTOR]:   Your honor, looking at his—a level 7 offense, defendant is at least a—has a criminal history of B. [District Attorney] indicates he may be an A. So he would be looking at potentially, if a B, 25 to 30 months consecutive; if an A, 31 to 36 months consecutive.

"THE COURT:   And the maximum sentence, although this is just the maximum, it doesn't apply within the sentencing guidelines grid, is a 20-year sentence according to the statute [ORS] 166.275.

"* * * * *

"THE COURT:   But conviction could result in lengthy sentences up to as much as 36 months under the sentencing guidelines grid even if the court did not depart. So it's a serious charge, and you could face a consecutive sentence as well. Is there some reason that you did not want to have an attorney?

"DEFENDANT:   I've always represented myself.

"THE COURT:   Okay. Has that worked out pretty well for you?

"DEFENDANT:   Yes, it has.

"THE COURT:   Okay. Well, that's good. That's important. And I'm required to talk with you just briefly about your rights to have an attorney. And, of course, to advise you that you have the right to have an attorney; and to advise you that if you can't afford an attorney I could appoint one for you at public expense; and to let you know that attorneys are trained to review the charges like this for possible defenses, file motions that might be appropriate, to negotiate with the district attorney, try the case for you if you wish, many different things an attorney can do. You're aware of that and you want to give up your right to have an attorney?

"DEFENDANT:   Yes."

At defendant's request, the court then set the matter for a jury trial. The court also instructed the district attorney to mail all discovery directly to defendant in custody, set a pretrial conference date, and reminded defendant that the

maximum sentence for the offense charged was set out on his copy of the indictment. Defendant told the court that he intended to file at least seven motions and "[a]fter I get discovery, there might be more." At the conclusion of the arraignment proceeding, defendant stated, "Yeah, it ought to be interesting. All right. Thanks."

Defendant next appeared in court on April 18 to file various legal motions, including a motion to dismiss based on alleged violation of his speedy trial right. He confirmed at the outset of that appearance that he did not want an attorney and that he still wanted to represent himself. However, defendant filed a motion for appointment of "co-counsel," explaining to the court that "I might need an attorney to assist me. Not to represent me[.]" The court expressed doubt about appointing co-counsel but stated that it would appoint an attorney to represent defendant. Defendant asked whether he would receive "pleadings" directly from their source if counsel were appointed. The court told him that those materials would be sent first to the attorney. Defendant responded that, if that was the case, he wanted to represent himself.

Defendant was transported to court for oral argument on his motions on May 27. The court advised defendant that his motion for appointment of co-counsel had been denied. Defendant responded, "I don't have any problem with that. I was going to withdraw it anyway."[1]

On August 20, defendant appeared again before the court. The court previously had appointed an investigator to assist defendant and had received word from the investigator that defendant now wanted to be represented by counsel. The

---

[1] In a separate assignment of error, defendant challenges the trial court's denial of his motion to appoint co-counsel. There is no constitutional right to the sort of "hybrid representation" sought by defendant. *See State v. Stevens*, 311 Or 119, 124, 806 P2d 92 (1991). The trial court's decision not to appoint co-counsel is subject, instead, to review for abuse of discretion. *Id.* at 124-25. Defendant's manifest desire for autonomy in tactical decision making, his insistence on receiving all pleadings directly from their source, his inability to work effectively with the attorney who was eventually appointed to assist him at sentencing, discussed below, and the court's appointment of an investigator to assist defendant in trial preparation, demonstrate that the court did not err in denying defendant's motion. In any event, as noted, defendant indicated that he intended to withdraw the motion. We reject that assignment of error.

court asked defendant if that was so. Defendant answered, "At this time, no." The court reminded defendant that the case was set for trial the following Monday and told defendant that he would not be permitted to delay the trial by requesting an attorney then. Defendant responded that he had "no problem with that." The following colloquy ensued:

"THE COURT: All right. Have you ever had any experience representing yourself?

"DEFENDANT: Through several trials, yes.

"THE COURT: And have you been successful?

"DEFENDANT: Yes.

"THE COURT: You mean you've been—you've avoided convictions for having represented yourself?

"DEFENDANT: I've never represented myself in a criminal trial.

"THE COURT: Well, that's what I'm talking about. I'm not talking about civil cases.

"DEFENDANT: Oh, no. This is my first criminal.

"THE COURT: So therefore you've never been successful in representing yourself in a criminal case.

"DEFENDANT: Correct.

"THE COURT: Do you understand what happens in a criminal trial?

"DEFENDANT: Pretty much so.

"THE COURT: Have you been in trial with an attorney?

"DEFENDANT: Yes.

"THE COURT: And have you been convicted?

"DEFENDANT: Yes.

"THE COURT: Do you think you've learned enough during that experience to be able to effectively represent yourself?

"DEFENDANT: Yes, I do.

"THE COURT: And so you understand that you've got a jury?

"DEFENDANT: Yes.

"THE COURT: And you know how to question the jury?

"DEFENDANT: Voir dire.

"THE COURT: Pardon?

"DEFENDANT: Voir dire question, jury instructions, the whole nine yards."

After a brief discussion about other matters, the court stated, "We're here to determine—let the court determine whether or not you're going to want an attorney for trial Monday." To which defendant replied, "Basically the only way I would let an attorney represent me was if I was co-counsel." The court did not reconsider the previously denied request for co-counsel.

Defendant represented himself throughout the trial. He attempted to capitalize on his self-representation by telling jurors that he had decided not to waste taxpayer funds by having an attorney defend him and that he wanted to present his side of the case personally. He presented a generally consistent theory of defense that he had been set up by a racist corrections officer who had planted the razor blades in his cell. Nevertheless, defendant was convicted. At sentencing, defendant finally accepted the representation of an appointed attorney. However, he attempted to discharge the attorney when they disagreed over strategy. The court denied that request but permitted defendant, at his insistence, to call and examine his own witnesses at sentencing.

Because defendant concedes that he *intentionally* relinquished his right to counsel at trial, the decisive question on appeal is whether defendant also *knowingly* relinquished that right. Defendant argues that the court did not explain adequately the risks of self-representation and, therefore, that his relinquishment of counsel was not knowing. According to defendant, the trial court was required to

explain to him, in explicit terms, that an attorney could perform particular defense tasks that defendant himself likely could not perform as effectively.

■■   In *Meyrick,* the court explained what is required for a waiver of counsel to be valid:

"[T]he trial court should focus on what the defendant knows and understands. * * *

"* * * * *

"A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understands the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate.

"Article I, section 11, does not require a catechism by the trial court, however, before the right to counsel may be validly waived by a defendant. The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." *Id.* at 132-34 (footnotes omitted).

Our decisions following *Meyrick* have associated a knowing relinquishment of the right to counsel with a defendant's understanding of the risks of self-representation. *See, e.g.,* *State v. Kramer,* 152 Or App 519, 523-24, 954 P2d 855 (1998). Where the preferred colloquy did not occur on the record or, alternatively, was insufficient to explain the risks of self-representation to the defendant, the court may nevertheless infer, if the totality of circumstances so demonstrate, that the defendant knew the risks of self-representation. *State v. Massey,* 160 Or App 197, 199, 981 P2d 352 (1999); *State v. Brown,* 141 Or App 156, 161-62, 917 P2d 527, *rev den* 323 Or

691 (1996). We conclude, for the following reasons, that defendant knowingly relinquished his right to counsel.

At arraignment, the court specifically explained the maximum sentence for the charged felony, both in terms of the guidelines range and the statutory maximum. The court also explained that a consecutive sentence to defendant's current term of imprisonment was possible and that the charge was "serious." That colloquy plainly warned defendant that, if he was convicted, the stakes at sentencing would be very high. The court next explained, in specific terms, some of the functions that an attorney could perform for defendant: (1) an attorney could "review the charges" for "possible defenses"; (2) an attorney could file "appropriate" motions; (3) an attorney could negotiate with the district attorney; and (4) an attorney could try the case, along with "many other things an attorney can do."

■ Although defendant told the trial court that he was aware of those things and nonetheless wished to give up his right to an attorney, he now argues that the court's explanation was insufficient because it left too much to inference. Defendant does not argue that the court failed to provide an adequate array of examples of the benefits of legal representation in a criminal proceeding. Rather, according to defendant, the explanation was inadequate because the court failed to warn him that an attorney likely would perform certain tasks better than defendant could for himself. We disagree. Defendant demonstrated at his arraignment that he was an intelligent person who had a purposeful theory of defense. Given the trial court's detailed explanation of the seriousness of the charge and its recital of defense tasks for which an attorney is especially qualified, the court's message could not have been much plainer. It was telling defendant in no uncertain terms that a trained attorney could bring particular skills to the defense that a *pro se* defendant generally does not have. A warning that affirms the benefits of representation by counsel casts doubt conversely on a defendant's comparative competence to represent himself. Those premises are two sides of the same coin. The trial court's colloquy

demonstrates that defendant understood the risks of self-representation. Therefore, defendant's waiver of counsel was *knowing* and intentional.[2]

The totality of circumstances, if necessary, bolsters our conclusion. At four separate court appearances before trial, defendant repeatedly refused representation by counsel. Throughout the trial court proceedings, defendant consistently demonstrated that he was intelligent, articulate, and determined to control his own defense. At various stages, he asked for and received the court's assistance in procedural matters and trial preparation, including in obtaining discovery and in hiring an investigator. *See State v. Stolz*, 115 Or App 702, 706, 839 P2d 763 (1992) (intelligent, articulate defendant who was sophisticated enough to seek and obtain court's assistance in procedural matters validly waived counsel). During his last court appearance before trial, the court engaged defendant in an extended colloquy about his previous experience with self-representation and emphasized the difference between civil and criminal proceedings. Defendant, unfazed, professed familiarity with *voir dire*, jury instructions, and "the whole nine yards."

Defendant also discussed legal representation with his investigator. However, defendant steadfastly asserted control over his own defense. In fact, defendant's trial strategy was, in many respects, clever and well executed. *Cf. Curran*, 130 Or App at 128 (defendant's responses to court's questions, actions at trial and other incidents showed that he was not sophisticated enough to make an informed decision to waive counsel); *State v. Taylor*, 146 Or App 238, 245-46, 933 P2d 350 (1997) (defendant's mental condition raised concerns as to his appreciation of risks of self-defense). The record as a whole demonstrates that defendant knowingly and

---

[2] The cases defendant relies upon to support his contrary view each involved more limited warnings than were given here or, in fact, none at all. *See, e.g., State v. Chambers*, 150 Or App 336, 340, 946 P2d 300 (1997) (court merely explained importance of subpoenaing witnesses and did that only after waiver was accepted); *State v. Meyer*, 116 Or App 80, 84, 840 P2d 1357 (1992) (information about risks of self-representation limited to advice at arraignment that jury trials are "kinda tricky"); *see also Kramer*, 152 Or App at 522-23 (no colloquy); *State v. Mendonca*, 134 Or App 290, 293, 894 P2d 1247 (1995) (no colloquy); *State v. Curran*, 130 Or App 124, 127-28, 880 P2d 956 (1994) (no colloquy).

intentionally relinquished his right to counsel. Therefore, defendant's conviction does not offend Article I, section 11.

We also conclude that there was no violation of the Sixth Amendment. *See Meyrick*, 313 Or at 138; *Stolz*, 115 Or App at 706.

Affirmed.