Submitted November 10, 2014, reversed and remanded May 13, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONGHWAN KIM,
*Defendant-Appellant.*

Lane County Circuit Court
211223260; A153446

350 P3d 473

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Defendant appeals a judgment of conviction for various crimes described below, assigning error to the trial court's acceptance of his waiver of his right to counsel.[1] Defendant argues that he did not "knowingly" waive his right to counsel under Article I, section 11, of the Oregon Constitution, because the court did not inform him of the material risks of proceeding without an attorney or determine whether he understood those risks. We conclude that the record does not support a finding that, in the totality of the circumstances, defendant understood his right to counsel; therefore, defendant's waiver of his right to counsel was not "voluntarily and intelligently made." *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992). The trial court erred in accepting defendant's waiver of his right to counsel and, because that error was not harmless, we reverse and remand.

The relevant facts are undisputed. Defendant was charged with assault in the fourth degree, ORS 163.160, strangulation, ORS 163.187, stalking, ORS 163.732, violating a court's stalking protective order, ORS 163.750, and contempt of court, arising from incidents involving a female acquaintance. At the time of those incidents, defendant was 25 years old and a student at the University of Oregon. Defendant, who is from Korea, does not speak English as his native language; however, the record shows that he is capable of understanding written and spoken English and that he often addressed the trial court in English. In addition, a Korean-speaking interpreter provided interpretation services at all court proceedings.

On November 9, 2012, defendant, at his request, was assigned a court-appointed public defender. However, on December 11, the public defender moved to withdraw as counsel, because defendant had informed him that defendant "no longer wished [him] to be his attorney" and "would not speak with [him] further about the issue or about

---

[1] Although Judge Zennaché ultimately presided over the trial in this case, Judge Rasmussen served as the judge during the pretrial hearings held on December 11 and 13, 2012, including the hearing in which defendant's waiver of his right to counsel was accepted. For simplicity, we refer to Judge Rasmussen as the "trial court" throughout this opinion. Judge Carlson, who served as the judge during the settlement conference, is referred to as the "settlement judge."

[defendant's] case." During a hearing on the motion, the trial court granted the public defender's motion to withdraw and appointed another attorney, Johnson, to represent defendant. Also during that hearing, defendant told Johnson, off the record, that he wanted to represent himself. On the record, defendant told the court, "I pretty sure I am not guilty," to which the court responded, "so if you think that you're not guilty * * * you think that a good plan, then, would be to represent yourself?" Defendant then stated, "I am lawyer by myself. I can be attorney for me." The court told defendant, "I need you to talk with [Johnson] about what your options are." The court decided to "leave things set as they [were]," informing defendant that they would all talk again at the next scheduled court date two days later. After the hearing, Johnson spoke further with defendant, off the record and in the presence of an interpreter.

Two days later, on December 13, Johnson moved to withdraw as counsel. In an accompanying affidavit, Johnson stated that, after the previous hearing, he had spoken with defendant and "explained the role of an attorney and the types of things an attorney could do to assist him." According to Johnson's affidavit, defendant "continued to take the position that he desired to represent himself" and had declined Johnson's subsequent attempts to meet with him.

At a court appearance that same day, Johnson told the court that he had not requested new counsel to be appointed for defendant because defendant wanted to represent himself. The court then asked defendant about the statements that defendant had made at the previous hearing, in which he had told the court, "I am lawyer by myself. I can be attorney for me." When the court asked defendant whether he was an attorney in Oregon or in his home country, defendant stated that he was not. The court asked why he had told the court that he was an attorney, and defendant stated that he had wanted a chance to speak to the court and that it was his "personal belief" that he was an attorney. The colloquy continued:

"THE COURT: So you'd like to represent yourself?

"[DEFENDANT]: (In English.) Yes, I want.

"THE COURT: And the trial is scheduled for next Tuesday. You understand that?

"[DEFENDANT]: (In English.) Yes, I really want to (indiscernible.)

"THE COURT: And you want to represent yourself at trial?

"[DEFENDANT]: (In English.) Yes. I'm begging.

"THE COURT: And do you want a jury trial?

"[DEFENDANT]: (In English.) Yes, I want.

"THE COURT: Do you know how to pick a jury?

"[DEFENDANT]: (In English.) I think it's just random.

"THE COURT: Do you know how it's done?

"[DEFENDANT]: (In English.) Just I need to (indiscernible) prosecutor. I want a chance to—I will not—I don't have anything hide.

"THE COURT: You're way ahead of me. Do you know how to pick a jury?

"[DEFENDANT]: (Inaudible.)

"THE COURT: Do you know how evidence is placed into evidence?

"[DEFENDANT]: (In English.) I have basic knowledge about that.

"THE COURT: Do you know the Rules of Evidence?

"[DEFENDANT]: (In English.) I have (indiscernible).

"THE COURT: Do you know how to make an objection?

"[DEFENDANT]: (In English.) I believe (indiscernible)."

The court told defendant:

"THE COURT: I'm concerned that people who think they know how to try cases rarely know how to try cases.

"Every defendant in our system is presumed innocent. That goes for you. That goes for all the folks who are out of custody. That goes for the fellow here sitting in the back row who's in custody. And the State has certain obligations

about how to proceed, but the Court rules and the Rules of Evidence apply to everybody. And they apply to everyone equally. And to get a fair trial it's important that you understand that and that you understand how to use those rules to your advantage.

"I've never seen someone who's not a lawyer do a jury trial successfully, representing themselves, in either a criminal or a civil case.

"Are you sure—are you sure you want to represent yourself?

"[DEFENDANT]:   (In English.) I'm sure. And I can (indiscernible).

"THE COURT:   I'm sorry, would you say that again for me?

"You're sure and?

"[DEFENDANT]:   (In English.) I'm sure.

"THE COURT:   Yes.

"[DEFENDANT]:   (In English.) And I will accept every penalty and every (indiscernible) of my decision.

"THE COURT:   All right. So you're willing to accept all the consequences of deciding to proceed on your own?

"[DEFENDANT]:   (In English.) Yes."

The court asked the state whether it wished him to inquire further, to which the state responded: "Your Honor, this case does represent a significant immigration consequence to this defendant that I don't know that he's consulted with an attorney about." The court addressed defendant again:

"THE COURT:   Conviction could result in deportation or refusal of naturalization. Does that change your mind?

"[DEFENDANT]:   (In English.) I accept everything (indiscernible) of my decision.

"THE COURT:   All right. You accept any consequence of your decision to proceed on your own. Is that what you're saying to me?

"[DEFENDANT]:   (In English.) Yes."

At that point, the court granted Johnson's motion to withdraw as attorney of record and informed defendant that he would be allowed to represent himself.

The court then informed defendant that he would require an attorney to act as "back-bench consultant," at which point Johnson addressed the court:

"MR. JOHNSON:  Your Honor, whoever represents him * * * will probably not be able to give him any advice about immigration consequences[.]

"THE COURT:   I think that's a fair note to make on the record so that the defendant understands that fully. So that lawyer will not be representing you. That lawyer will not be able to give you advice about consequences. That lawyer will not * * * help you prepare a defense, subpoena witnesses, et cetera. And you understand that?

"[DEFENDANT]:   (In English.) Yes, I understand."

After discussing various pretrial matters, the court asked defendant if he had any questions, reminding him that "what we're talking about today are just procedural decisions about trial, lawyers, translation, et cetera. It's not about the case. That's for trial next week." Defendant then raised some questions about the translation of certain written evidence and attempted to discuss some of the evidence that would be presented at trial. The court responded:

"This is why I suggest to you that maybe you want a lawyer, and I'm not going to reconsider that unless you ask me to. But you're trying to tell me now why—why you're innocent. That's what a trial is for. That's not today."

The state then noted, for the record, that there had been some concerns about defendant's mental health during discovery, but that it did not seem to be a concern that day. The court agreed that it had had concerns about defendant's mental health two days prior, but no longer had such concerns.

Later on December 13, after the court appearance, defendant appeared before a different judge for a settlement

conference hearing. The settlement judge noted that she had met defendant during a previous appearance regarding a separate, but related, matter. The settlement judge briefly explained the charges that had been brought against defendant, discussed the penalties for those charges, and notified defendant that he had a right to a jury trial. She also told defendant that "[i]t's generally to the advantage to both sides to at least talk about" a possible settlement agreement. The settlement judge then stated:

> "Now, I know that you have had an attorney appointed to represent you * * * [a]nd you asked him to stop being your attorney, so he requested the judge to let him no longer be your attorney, and the judge agreed to that. And then another attorney was assigned to represent you, and I understand you do not wish him to represent you either.

> "It's important for you to know that anything you say about your case in the presence of anyone other than your attorney can be used against you at trial. And you have a right not to make statements that could hurt your case at trial.

> "You have—and I'm sure the judge has gone over this with you, the one that you were just in front of—the right to be represented by an attorney here, and one that is paid for by the state. So it's at no cost to you.

> "And I'm a little bit worried for you as far as your ability to get through this process if you are not yourself an attorney and not familiar with the way the legal process here works. You may be at a real disadvantage if you don't have an attorney representing you. And you don't have to have a court-appointed attorney if you can afford to hire one. You could choose whoever that attorney might be.

> "And I'm just kind of worried that if—if you're not a lawyer, you're in over your head. These are serious charges."

Defendant responded, in English, "In Korea I'm involved in lawyer. I paid. I hired. (Indiscernible) do I have." The court asked him where the attorneys were, and defendant answered, "Just I lost them. And just I have returned (indiscernible). I am represent by myself." He continued, "And just I don't want to talk about that now. And just I need to (indiscernible) my case. But just to be real clear, I'm very afraid to talk about case now."

The court told defendant:

"[J]ust so you know, one of the things that sounds like is very important to your case is that you've got evidence that you want to be able to have the Court or the jury hear. And you need to know what the procedures are for getting that evidence before the Court. So, you know, that's one of my concerns."

The court then explained the settlement process, including a defense attorney's usual role in the process, and asked defendant if he would consider allowing his attorney adviser to participate in discussing settlement with the state, or at least to be present during the settlement discussions. Defendant responded, "That's not fine to me." The court then addressed Johnson:

"THE COURT: So Mr. Johnson, did he waive his right to counsel and get his full explanation of the advantages of having an attorney, disadvantages of representing himself?

"MR. JOHNSON: Yes. I went over that with him on Tuesday. [The trial judge] explored that with him today at 2:30[.]

"THE COURT: Okay. I just want to make sure he's been properly informed."

According to a journal entry by the settlement judge, defendant ultimately "agreed to allow Mr. Johnson to sit at counsel table as his legal advisor, but was clear that Mr. Johnson was not his attorney." Defendant did not accept the settlement offered by the state, and the case proceeded to trial.

Trial was held on December 18, during which defendant represented himself and Johnson served as his attorney advisor. Defendant was found guilty by a jury and convicted of assault in the fourth degree, stalking, and violating a court's protective order,[2] and the court found defendant in contempt of court for having violated a court order.[3]

___

[2] The strangulation charge was dismissed after the presentation of all the evidence at trial.

[3] Although we have previously stated that contempt is not a crime, , 258 Or App 882, 885, 311 P3d 988 (2013) (citing , 239 Or App 313, 316, 243 P3d 496 (2010)), a defendant in a punitive contempt proceeding is generally entitled to the same rights that a defendant would be entitled to in a criminal proceeding, except the right to a jury trial. ORS 33.065(6) ("Except for the right to a jury trial, the defendant is entitled to the constitutional and statutory protections, including the right to appointed counsel, that a defendant would be entitled to in a criminal proceeding in which the fine or

Defendant now appeals, assigning error to the trial court's acceptance of his waiver of his right to counsel. Defendant contends that he did not knowingly waive his right to counsel, arguing that "[n]either defendant's conversations with the trial court, nor the representations made by his attorney[,] were sufficient to permit the court to allow him to waive counsel." Specifically, defendant argues that the court's conversations with defendant before trial "should have raised red flags concerning defendant's mental health, lack of English language skills, and lack of understanding about the benefits of an attorney and the risks of proceeding without one," and that, even assuming that defendant represented to the court that he knew how to perform the tasks of an attorney, "the court did not ensure that he actually had any such knowledge." Defendant further argues that the court merely gave "abstract" warnings to defendant and that "[a]n abstract warning that there may be risks or disadvantages of self-representation, without any information establishing that defendant had an appreciation of what those might be, is insufficient to establish a knowing waiver."

The state responds that the colloquies between the court and defendant established that defendant knowingly waived his right to counsel, because the court sufficiently explained the risks of self-representation and expressly cautioned defendant against representing himself, and defendant's statements to the court demonstrated that he understood the court. Moreover, the state contends that the totality of the circumstances establish that defendant knowingly waived his right to counsel, because defendant could express himself to the court, the court was able to observe and assess defendant's competency and demeanor, Johnson had spoken to defendant about waiving his right to counsel, and defendant had at least some previous experience with the court system.[4]

---

term of imprisonment that could be imposed is equivalent to the punitive sanctions sought in the contempt proceeding.);                , 353 Or 816, 819 n 1, 306 P3d 610 (2013) ("Defendants in punitive contempt proceedings are generally entitled to the same constitutional protections afforded defendants in criminal proceedings, except for the right to a jury trial."). Thus, our analysis applies to both defendant's criminal proceedings and his punitive contempt proceedings.

[4] Specifically, the state notes that defendant "had appeared in the circuit court previously on a related matter," "had contact with at least two attorneys

The validity of a defendant's waiver of the right to counsel is a question of law that we review for errors of law in light of the circumstances of the particular case. , 256 Or App 416, 420, 300 P3d 270 (2013). Article I, section 11, provides, in part, that a criminal defendant has the right "to be heard by himself and counsel[.]" The Article I, section 11, right to counsel "may be waived," but "a trial court may accept a defendant's proffered waiver of counsel only if it finds that the defendant knows of his or her right to counsel and, if indigent, of his or her right to court-appointed counsel, and that the defendant intentionally relinquishes or abandons that right." *Meyrick*, 313 Or at 131-33. In other words, waiver of counsel "must be voluntarily and intelligently made." *Id.* at 132. As we explained in *Erb*, "'[v]oluntarily' refers to the fact that the waiver is an intentional act that is not coerced," and "'[i]ntelligently' 'refers to a defendant's *knowledge and understanding* of the right to counsel.'" 256 Or App at 421 (quoting *Meyrick*, 313 Or at 132 n 8) (emphasis in *Erb*).

In this case, defendant does not argue that his waiver of counsel was involuntary; thus, the sole issue on appeal is whether the record establishes that defendant's waiver was "knowingly" made—that is, whether defendant both knew of and understood his right to counsel. *Meyrick*, 313 Or at 132 n 8. Because defendant does not dispute that he *knew*, at least in a general sense, of his right to counsel, we address only whether the record establishes that defendant *understood* that right. *See Erb*, 256 Or App at 421 ("[B]ecause there is no dispute that defendant *knew*, at least in a general sense, of her right to counsel, we address whether the record establishes that defendant *understood* that right." (Emphasis in original.)).

"A defendant is said to understand his or her right to counsel if, considering the 'totality of the circumstances,' the record reflects that he or she 'substantially appreciates the material risks of self-representation in his or her case.'" *Id.* at 422 (quoting , 172 Or App 414, 423, 19 P3d 925 (2001)). "[I]t is not required that a defendant 'know

---

who were appointed to represent him in this case," and "consulted with his second court-appointed counsel about how to proceed with the trial."

and completely appreciate every potential risk \* \* \*,' but 'a defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient.'" *Id.* (quoting *Jackson*, 172 Or App at 423).

In *Meyrick*, the Supreme Court explained that

"[a] colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate."

313 Or at 133. However, "Article I, section 11, does not require a catechism by the trial court," *id.* at 134, and, "[w]here the preferred colloquy did not occur on the record or, alternatively, was insufficient to explain the risks of self-representation to the defendant, the court may nevertheless infer, if the totality of circumstances so demonstrate, that the defendant knew the risks of self-representation," , 172 Or App 546, 553-54, 19 P3d 369, *rev den*, 332 Or 305 (2001). A defendant's "knowledge and understanding of the right to counsel \* \* \* may turn on things other than on what the court tells the defendant, such as the defendant's age, education, and experience and the complexity of the charges and possible defenses," *Meyrick*, 313 Or at 132 n 8, as well as "obvious cultural differences or lack of English language skills," *id.* at 132 n 6.

We now apply those principles to the circumstances of this case. As noted, at defendant's December 13 court appearance, the trial court asked defendant whether he knew how to pick a jury, to which he responded "I think it's just random." Next, the court asked defendant if he knew how to place evidence into evidence, to which defendant responded, "I have basic knowledge about that." Then, the

court asked whether defendant knew the rules of evidence and how to make an objection, and the record does not indicate a clear response on the part of defendant.

The court then told defendant that it was "concerned that people who think they know how to try cases rarely know how to try cases," and it warned defendant that "the Court rules and the Rules of Evidence apply to everybody equally." The court told defendant that "to get a fair trial it's important that you understand that and that you understand how to use those rules to your advantage," and added, "I've never seen someone who's not a lawyer do a jury trial successfully, representing themselves, in either a criminal or a civil case." The court then asked defendant if he was sure he wanted to represent himself, to which defendant responded "I'm sure," and told the court, "I will accept every penalty * * * of my decision."

After that exchange, the trial court decided to allow Johnson to withdraw as defendant's attorney. The court informed defendant that he would be allowed to represent himself, but that it would require an attorney to act as a "back-bench consultant," or attorney advisor. It explained that the attorney advisor would not represent him, pick a jury for him, advise him about consequences, prepare a defense for him, or subpoena witnesses.

As noted, the Supreme Court, in *Meyrick*, stated that "[a] colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation." 313 Or at 133. The court also noted that "[l]eading questions put to a defendant may be answered in the affirmative without actual understanding," and stated that "courts should strive to demonstrate on the record that a defendant understands the implications of the waiver." *Id.* at 133 n 9. In our view, that principle is especially important where, as here, a defendant exhibits questionable English language skills. Although a Korean-speaking interpreter was present during the court's colloquy with defendant, defendant often addressed the court in English, and the record shows that, at times, there was some confusion between the court and

defendant.[5] The colloquy also indicates that, at times, defendant's answers were nonresponsive to the questions asked by the trial court,[6] and thus belies the state's contention that defendant understood that he was waving his right to counsel or, more importantly, that he understood the significance of his answers in the context of Oregon's legal system.

Even assuming that defendant's responses to the trial court during the above exchange were generally affirmative, those responses, especially in light of defendant's English language ability, could very well have been "answered in the affirmative without actual understanding." *Id.* at 133 n 9. As defendant now argues on appeal, the conversation "should have raised red flags" regarding defendant's ability to understand the risks of self-representation, and the court should have striven to demonstrate on the record that defendant actually understood the court's warnings.[7] *See* , 203 Or App 222, 229, 125 P3d 33 (2005) (noting that the court's warnings were "cursory in nature and lacking in detail," and stating that, "further, more detailed warnings were required of the trial court based on the circumstances of [the] case," including that the defendant had never participated as a party in a trial, he was not warned by the attorney who represented him up until the morning of trial of the risks of self-representation, he did not speak English as his first language, he had only a ninth-grade education, and his appointed attorney had expressed concerns

---

[5] For example, at the December 11 hearing, the trial court asked defendant, "So if you think that you're not guilty * * * you think that a good plan, then, would be to represent yourself?" Defendant answered, "I am lawyer by myself. I can be attorney for me." The trial court interpreted this response literally and, two days later, asked defendant why he had told the court that he was an attorney. Defendant responded, "It's my personal belief I am an attorney," and, that time, the court seems to have interpreted his response figuratively, as a statement that defendant wanted to represent himself.

[6] For example, when the trial court asked defendant whether he knew how to pick a jury, he responded, "I think it's just random," and then when the court asked if he knew how it was done, defendant responded, "Just I need to (indiscernible) prosecutor. I want a chance to—I will not—I don't have anything to hide."

[7] For example, the court could have asked defendant to "repeat the essence of the information or explain his or her understanding of it to the court." *See* *Meyrick*, 313 Or at 133 n 9 ("One method of ensuring that a defendant understands the information given by the court is to have the defendant repeat the essence of the information or explain his or her understanding of it to the court.").

about his mental health). For the reasons described above, we conclude that the colloquy between the trial court and defendant, before the court accepted defendant's waiver of his right to counsel, was not sufficient to allow the court to conclude that defendant substantially appreciated the risks of self-representation. *See* 271 Or App at 198-201.

To the extent that the state references subsequent events as showing that defendant understood the risks of self-representation, we disagree. The conversation between defendant and the settlement judge, during the settlement conference later the same day on December 13, does not provide any further evidence that defendant understood the risks of self-representation. *See* 271 Or App at 201-03. After expressing concern about defendant's decision to represent himself, and specifically warning defendant that he "may be at a real disadvantage" without an attorney, the settlement judge did not attempt to determine whether defendant actually understood that warning. Instead, the settlement judge asked Johnson whether defendant had gotten a "full explanation of the advantages of having an attorney"; after Johnson stated that both he and the trial judge had discussed that with defendant, the settlement judge replied, "Okay. I just want to make sure he's been properly informed."

Moreover, the totality of the circumstances does not otherwise demonstrate that defendant understood the risks of self-representation. *See Howard*, 172 Or App at 553-54 ("Where the preferred colloquy did not occur on the record or, alternatively, was insufficient to explain the risks of self-representation to the defendant, the court may nevertheless infer, if the totality of circumstances so demonstrate, that the defendant knew the risks of self-representation."). As noted, a defendant's understanding of the right to counsel may turn on factors such as the defendant's "age, education, and experience and the complexity of the charges and possible defenses," *Meyrick*, 313 Or at 132 n 8, as well as "obvious cultural differences or lack of English language skills," *id.* at 132 n 6. Defendant was at least 25 years old at the time of trial, and he was a student at the University of Oregon at the time of the events leading up to his arrest. However, he had never participated in a jury trial, and there was little, if any, evidence of previous experience in the criminal justice

system.[8] Although defendant initially requested, and was assigned, a public defender, defendant stopped talking to that attorney only one month later, and he chose to have limited contact with Johnson throughout the pretrial proceedings, before he had waived his right to counsel. Finally, defendant demonstrated questionable English-language skills, as discussed above.

The record does not support a finding that, in the totality of the circumstances, defendant understood his right to counsel; therefore, defendant's waiver of counsel was not "voluntarily and intelligently made," *id.* at 132, and under Article I, section 11, the trial court erred in accepting defendant's waiver of his right to counsel. We further conclude that the court's error was not harmless, because we are unable to tell what the outcome of defendant's case would have been if he had been represented by counsel. *See State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996) ("Error is harmless if there is little likelihood that it affected the outcome in this case."); , 235 Or App 646, 656, 234 P3d 1030, , 236 Or App 465, 236 P3d 789 (2010) ("Where we are unable to determine what the outcome of a case would have been if the defendant had been represented by counsel instead of proceeding without counsel, the error is not harmless."); *Erb*, 256 Or App at 427 (noting that, "because we are unable to tell what the outcome of defendant's case would have been if she had been represented by counsel, we conclude that the trial court's error in allowing defendant to proceed without counsel was not harmless").

Reversed and remanded.

---

[8] The only evidence of previous court experience was that defendant was accused, in the information, of violating a court protective order and later, at the settlement conference, the settlement judge noted that she had met him during a hearing on that matter.